2004 UT 71

**In re Ronald Kent KUNZ, Debtor.**

**In re Roseann Jean Rockwell, Debtor.**

No. 20030502.

Supreme Court of Utah.

Aug. 24, 2004.

Douglas J. Payne, David N. Kelley, Salt Lake City, for debtor Ronald Kent Kunz.

Stephen W. Rupp, Jeremy C. Sink, Salt Lake City, for Stephen W. Rupp, Chapter 7 bankruptcy trustee of Ronald Kent Kunz.

Suzanne Marychild, Logan, for debtor Roseann Jean Rockwell.

David L. Miller, Layton, for David L. Miller, Chapter 7 bankruptcy trustee of Roseann Jean Rockwell.

WILKINS, Associate Chief Justice:

¶ 1 This case comes to us on certification of a question of state law from the United States Bankruptcy Court for the District of Utah. The question asks "[w]hether funds transferred directly from one exempt account, as described in Utah Code [section] 78–23–5(1)(a)(x), to another exempt account within one year before a debtor files bankruptcy constitute 'amounts contributed' within the meaning of Utah Code [section] 78–23–5(1)(b)(ii)." We hold that such funds are not "amounts contributed" within the meaning of the statute.

## FACTUAL AND PROCEDURAL HISTORY

¶ 2 We accept as true the facts described by the bankruptcy court in the certification order. At issue is the rollover of funds by

two different bankruptcy debtors into different IRA-type accounts within one year prior to filing petitions in bankruptcy. In November 2002, debtor Ronald Kent Kunz filed a Chapter 7 bankruptcy petition. Approximately three months prior to the petition date, Kunz authorized a rollover of funds from his Individual Retirement Account (IRA) at Merrill Lynch directly into a Wachovia Securities IRA. However, Kunz contributed all of the funds contained in the Merrill Lynch IRA more than one year before the petition date. Kunz claimed the rolled-over funds as exempt from execution.

¶ 3 In the second case, debtor Roseann Jean Rockwell filed a Chapter 7 bankruptcy petition in December 2002. While employed at Moore North America, Inc. ("Moore"), Rockwell participated in a Retirement Income Plan maintained by her employer. As of one year before the petition date, the plan had accumulated the funds at issue here. Approximately six months prior to her bankruptcy filing, Rockwell lost her job with Moore. Approximately one month prior to the filing, Rockwell directed Moore to roll over her retirement plan funds into an IRA maintained by Pacific Life Insurance Company. Like Kunz, Rockwell claimed these funds as exempt from execution.

¶ 4 Kunz and Rockwell relied on Utah Code section 78–23–5(1)(a)(x), which provides that:

> except as provided in Subsection (1)(b), [an individual is entitled to exemption of] any money or other assets held for or payable to the individual as a participant or beneficiary from or an interest of the individual as a participant or beneficiary in a retirement plan or arrangement that is described in Section ... 401(k), [or] ... 408 ... of the United States Internal Revenue Code....

Utah Code Ann. § 78–23–5(1)(a)(x) (2002). The bankruptcy trustees, however, objected to the debtors' claims based on Utah Code section 78–23–5(1)(b)(ii), which excludes from the section 78–23–5(1)(a)(x) exemption those "amounts contributed ... by or on behalf of a debtor within one year before the debtor files for bankruptcy." *Id.* § 78–23–5(1)(b)(ii). The trustees argued that because the debtors

rolled funds over into IRAs within a year of filing for bankruptcy, section 78–23–5(1)(b)(ii) precludes the debtors from claiming exemptions for those funds.

¶ 5 Whether rollover funds constitute "amounts contributed" is a question of first impression under Utah law. The bankruptcy court certified the question to us for resolution pursuant to rule 41 of the Utah Rules of Appellate Procedure. *See* Utah R.App. P. 41. We accepted the certification.

## STANDARD OF REVIEW

¶ 6 On certification, we "answer the legal questions presented" without "resolv[ing] the underlying dispute." *Spackman ex rel. Spackman v. Bd. of Educ.*, 2000 UT 87, ¶ 1 n. 2, 16 P.3d 533.

## ANALYSIS

¶ 7 The central question presented for our review is whether rollover funds from exempt accounts are "amounts contributed" within the meaning of Utah Code section 78–23–5(1)(b)(ii). On certification, the debtors argue that the plain language of the statute does not reach rollovers, or alternatively, that the statute is ambiguous and should be construed liberally in their favor. Conversely, the trustees argue that rollovers within one year of filing a bankruptcy petition are "amounts contributed" under the plain meaning of the statute.

¶ 8 Pursuant to general principles of statutory interpretation, "[w]e ... look first to the ... plain language," recognizing that "our primary goal is to give effect to the legislature's intent in light of the purpose the statute was meant to achieve." *Evans v. State*, 963 P.2d 177, 184 (Utah 1998) (internal citation omitted). However, "[i]f we find the provision ambiguous ... we then seek guidance from the legislative history and relevant policy considerations." *In re Worthen*, 926 P.2d 853, 866 (Utah 1996). In addition, we construe exemption statutes "liberally ... in favor of the debtor to protect him and his family from hardship." *Russell M. Miller Co. v. Givan*, 7 Utah 2d 380, 325 P.2d 908, 909–10 (1958).

¶ 9 The plain language of the statute may reasonably be read to either exclude or include rollover funds. The debtors argue that

the plain meaning of "contribute" is to "give to a common fund," *The American Heritage Dictionary of the English Language* 290 (1981), whereas the plain meaning of "rollover" is to "transfer … funds" between accounts, *Black's Law Dictionary* 1329 (7th ed.1999). Read this way, "amounts contributed" would exclude rollovers. Conversely, the trustees argue that the plain meaning of "amounts contributed" includes any funds deposited into a retirement account. Under the trustees' reading, rollovers are "amounts contributed" because they are essentially deposits into retirement accounts. Both interpretations are reasonable and can be supported by the language of the statute. As such, we conclude that the statute is ambiguous.

¶ 10 Because the statute is ambiguous, we turn to legislative intent and policy considerations for assistance. *See Worthen,* 926 P.2d at 866. The language of the statute itself gives us little guidance in discerning the legislature's intent on this narrow question. Only one sentence in the entire exemption statute indicates any legislative purpose, stating that certain exemptions exist "for the support of the individual and his dependents." Utah Code Ann. § 78–23–6 (2002). While this statement is not specifically directed towards section 78–23–5, it describes the policy behind all exemption statutes; namely, providing debtors with sufficient support to prevent them from becoming public charges. *See* 35 C.J.S. *Exemptions* § 3 (1999). In accord with this policy, we have historically deferred to the interests of debtors by liberally construing ambiguous exemption statutes in their favor. *See Givan,* 325 P.2d at 909–10.

¶ 11 There is, however, a competing policy behind the section 78–23–5(1)(b)(ii) one-year exception to retirement fund exemptions. This policy is to prevent debtors from using retirement accounts to shield funds from their creditors. *Cf. In re McKown,* 203 B.R. 722, 725 (Bankr.E.D.Cal.1996) (noting that using an IRA to "shield[ ] funds from creditors" is impermissible) (internal quotation omitted). Therefore, in construing section 78–23–5(1)(b)(ii), we must balance this policy with our historic policy favoring debtors.

¶ 12 Direct rollovers between exempt accounts do not shield funds from creditors that would otherwise be available. A rollover from a section 78–23–5(1)(a)(x) account contains funds that are already exempt, provided the funds were deposited into the account more than one year prior to the bankruptcy filing. *See* Utah Code Ann. § 78–23–5(1)(a)(x). If those funds are transferred directly to another section 78–23–5(1)(a)(x) account in a rollover transaction, no change in the funds' character occurs. That is, a rollover between exempt accounts does not convert non-exempt funds into exempt funds or exempt funds into non-exempt funds. Rollovers thus do not shield funds from creditors but only transfer assets already protected from execution for a debtor's future support. Consequently, a construction favoring debtors does not violate the implied policy favoring creditors behind the one-year exception to retirement fund exemptions contained in section 78–23–5(1)(b)(ii). We therefore hold that rollovers between exempt section 78–23–5(1)(a)(x) accounts are not "amounts contributed" within the meaning of section 78–23–5(1)(b)(ii).[1]

## CONCLUSION

¶ 13 The "amounts contributed" language of Utah Code section 78–23–5(1)(b)(ii) can reasonably be read to either exclude or include rollovers from exempt retirement assets described in section 78–23–5(1)(a)(x). Consequently, this language is ambiguous, and we therefore hold, based on the policy of liberally construing exemption statutes in favor of debtors, that rollover funds are not "amounts contributed."

¶ 14 Chief Justice DURHAM, Justice DURRANT, Justice PARRISH, and Justice NEHRING concur in Associate Chief Justice WILKINS' opinion.

---

**1.** Indeed, the legislature recently amended section 78–23–5(1)(b)(ii) to exclude rollovers from "amounts contributed." Although this amendment occurred subsequent to this action and does not directly govern this case, it is nevertheless important to note how the legislature has elected to resolve the ambiguity.