2006 UT 41

**ROBERT J. DeBRY AND ASSOCIATES, P.C., a Utah corporation, Plaintiff and Appellant,**

v.

**QWEST DEX, INC., a Colorado corporation; and Dex Media West, LLC, a Delaware limited liability corporation, Defendants and Appellees.**

No. 20050299.

Supreme Court of Utah.

July 28, 2006.

Rehearing Denied Sept. 15, 2006.

Lynn P. Heward, Salt Lake City, for plaintiff.

Joseph J. Joyce, James D. Franckowiak, Salt Lake City, Bobbee J. Musgrave, Paul J. Lopach, Denver, CO, for defendant.

WILKINS, Associate Chief Justice:

¶ 1 Defendants Qwest Dex, Inc., and Dex Media West LLC (collectively, "Dex") permit out-of-area businesses to purchase local phone numbers and to advertise their available goods and services in the Ogden area telephone directory. We have been asked by the United States Court of Appeals for the Tenth Circuit to determine whether Defendants violated Utah Code section 13–11a–3(1)(b), (d), or (t) by publishing both a table of numerical prefixes associated with "a local calling area" and advertisements by third parties that include a market expansion line

telephone number without any physical business address; and if so, whether Defendants are exempt from liability under Utah Code section 13–11a–5(1). We conclude that Dex's actions did not violate Utah Code section 13–11a–3(1). As a result, it is unnecessary for us to address whether Dex is exempt under section 13–11a–5(1).

## BACKGROUND

### I. FACTUAL BACKGROUND

¶ 2 "We accept as true the facts described by the [Tenth Circuit] in the certification order."[1]

¶ 3 Dex prints telephone directories, containing residential and corporate phone numbers, throughout the State of Utah. It also sells advertising in the "yellow page" section of its directories.

¶ 4 Each city in Utah has a specific series of numerical prefixes associated with the telephone listings in that city. Toward the front of the phone book, Dex provides its customers with a list of all prefixes affiliated with the local calling area and states that "the prefix(es) listed beside your community and those communities listed below it represent your local calling area."

¶ 5 Dex permits businesses that do not have a "local presence" in the particular geographic area to purchase a local telephone number, known as a "Market Expansion Line" (MEL), to be listed in the telephone directory.[2] An MEL allows customers to dial local telephone numbers to connect with out-of-area businesses without incurring long distance charges. The MEL phone numbers contain the designated numerical prefixes for telephone listings in the specific geographic area. For example, a business in Salt Lake City may purchase an MEL number with an Ogden prefix, and a person in Ogden may then call the Salt Lake City business without incurring long distance charges.

¶ 6 The Utah Public Service Commission, the government agency responsible for tele-phone communications in the state, has a written agreement with Dex regarding the MEL program. The agreement, known as the "Exchange and Network Services Tariff" (the Tariff), requires Dex to provide "one free listing in the White and Yellow Page directories covering the exchange in which the MEL CO is located." "[H]owever, at the customer's request, the listing may be omitted at no charge." The language of the Tariff does not expressly or impliedly require that the yellow page listing contain an address.

¶ 7 Plaintiff Robert J. DeBry and Associates (DeBry) hired a marketing research firm to conduct a survey in the Ogden area about the potential confusion resulting from Dex's MEL program. The survey "show[ed] that 67% of Dex customers are tricked or misled when they see a 'Market Expansion Line' telephone number in their local Dex yellow page directory with no listed address, because they believe that the business or profession actually has a local Ogden office." DeBry sent the results of the survey to Dex.

¶ 8 DeBry contends that the advertisements containing MEL numbers without addresses are deceptive and violate section 13–11a–3(1)(b), (d), and (t) of the Utah Truth in Advertising Act (UTIAA).[3]

### II. PROCEDURAL BACKGROUND

¶ 9 DeBry sued Dex in a state district court for violations of the UTIAA. Dex removed the case to the United States District Court for the District of Utah. Pursuant to rule 12(b)(6) of the Federal Rules of Civil Procedure, the federal district court dismissed DeBry's complaint for failure to state a claim upon which relief can be granted. Because Dex's conduct was in compliance with the Tariff on file, the federal district court did not decide the question of whether Dex was exempt from liability under the

---

1. *In re Kunz*, 2004 UT 71, ¶ 2, 99 P.3d 793.

2. Some of these companies include the law firm of Siegfried & Jensen, and a printer repair company known as Copy Doc, Inc.

3. Utah Code Ann. § 13–11a–3(1)(b), (d), (t) (2006).

UTIAA.[4]

¶ 10 DeBry appealed to the Tenth Circuit of the United States. The Tenth Circuit, recognizing that neither the Utah Supreme Court nor the Utah Court of Appeals has yet decided a case arising under the UTIAA, certified the above question for our review.

## ANALYSIS

¶ 11 The Tenth Circuit has asked us for guidance in this specific area of Utah law. Accordingly, we are not presented with a decision to affirm or reverse, and traditional standards of review do not apply.[5] We have jurisdiction under Utah Code section 78-2-2(1) to answer a question of law certified by the Tenth Circuit.[6]

¶ 12 This is a case of statutory interpretation. We have not been asked to focus on the merits of the federal court's 12(b)(6) motion. Therefore, our analysis focuses strictly on the statutory language and on applying Dex's actions to the terms of the UTIAA found in Utah Code section 13-11a-3(1)(b), (d), (t) (2006):

(1) Deceptive trade practices occur when, in the course of his business, vocation or occupation:

. . .

(b) [a] person causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services.

. . .

(d) [a] person uses deceptive representations or designations of geographic origin in connection with goods or services.

. . .

(t) [a] person engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.[7]

We conclude that Dex's practice of permitting corporations to advertise MEL phone numbers without listing addresses does not violate the UTIAA. Inasmuch as we have found no violation of the UTIAA, we need not reach the second question as to whether Dex would be exempt from liability under Utah Code section 13-11a-5.[8]

¶ 13 We first address the statutory language of Utah Code section 13-11a-3(1)(b) to determine whether Dex has caused a likelihood of confusion as to the source, sponsorship, approval, or certification of goods or services. Next, we analyze whether pursuant to section 13-11a-3(1)(d), Dex made deceptive representations as to the geographic origin of the goods or services. Third, we consider whether Dex engaged in "any other conduct which similarly create[d] a likelihood of confusion or of misunderstanding" as required by section 13-11a-3(1)(t).

## I. DEX DID NOT VIOLATE SECTION 13-11a-3(1)(b) BECAUSE THE SOURCE, SPONSORSHIP, APPROVAL, OR CERTIFICATION OF GOODS OR SERVICES IS NOT MISLEADING OR CONFUSING

¶ 14 DeBry first argues that Dex's publication of MEL numbers without addresses for out-of-area businesses violates section 13-11a-3(1)(b) of the UTIAA. Under section 13-11a-3(1)(b), deceptive trade practices occur when a person causes "likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services."[9] DeBry contends that when businesses list MEL numbers without

---

4. *See id.* § 13-11a-5(1).

5. *See Miller v. United States,* 2004 UT 96, ¶ 10, 104 P.3d 1202, 1204.

6. Utah Code section 78-2-2(1) states that "the Supreme Court has jurisdiction to answer questions of state law certified by a court of the United States."

7. Utah Code Ann. § 13-11a-3(1)(b), (d), (t) (2006).

8. The UTIAA exemption provision found in Utah Code section 13-11a-5 states, "This chapter does not apply to:

(1) conduct in compliance with the orders or rules of, or a statute administered by, a federal, state, or local governmental agency...."

9. Utah Code Ann. § 13-11a-3(1)(b) (2006).

addresses in advertisements, those businesses mislead consumers and violate this UTIAA provision. We disagree.

■ ¶ 15 Although DeBry does not specify whether it claims the source, sponsorship, approval, or certification of goods and services is misleading, the implication based on the facts presented is that DeBry challenges the publication of MEL numbers without addresses as misleading as to the "source" of the advertisement. Thus, we begin by looking at the common definition of "source" as used in the statute. "Source" is generally defined as "a point of origin" or "one that supplies information."[10] In light of these definitions, we interpret the "source" of goods or services advertised in a telephone directory to ordinarily be the business that placed the advertisement. This will commonly be the company that financed the advertisement for the purpose of endorsing its own goods or services. And this "source"— the name of the business—is stated in the directory as part of the listing or advertisement.

¶ 16 For example, in this case, DeBry argues that one of the businesses advertising with an MEL number but no address is the law firm of Siegfried & Jensen. In such an example, the "source" of the advertised goods or services is Siegfried & Jensen because the advertisement most likely originated with and was funded by Siegfried & Jensen for the purpose of endorsing its legal services. Additionally, Siegfried & Jensen probably supplied Dex with the information contained in the advertisement.

¶ 17 Both the certification order and the record list several other businesses that have purchased MEL numbers for the same reason and have similarly advertised in the Ogden yellow pages. Such advertisements are not misleading or confusing as to the "source" of goods or services offered because the name of the business and its products or services are generally printed on the advertisement. Consequently, as publisher of

those advertisements, Dex has not violated section 13–11a–3(1)(b).

## II. DEX'S PUBLICATION OF TELEPHONE NUMBERS DOES NOT CONSTITUTE A REPRESENTATION OF GEOGRAPHIC ORIGIN OR LOCATION FOR WHICH DEX IS LIABLE UNDER UTAH CODE SECTION 13–11a–3(1)(d)

¶ 18 DeBry next alleges that Dex uses "deceptive representations or designations of geographic origin in connection with goods or services."[11] We conclude that Dex makes no "representation or designation of geographic origin," much less a deceptive one. Contrary to DeBry's assertions, Dex does not purport to list only those businesses with offices physically located in the calling area; rather, Dex merely lists the contact information for businesses offering products or services to customers in the calling area, regardless of the businesses' geographic locations. For example, by listing the telephone number for the law firm of Siegfried & Jensen, Dex does not represent that the firm has an office in the calling area—it only informs customers that the firm is willing to provide its services to those located in the calling area. Absent a representation as to geographic location, Dex could not have violated Utah Code section 13–11a–3(1)(d).

## III. DEX DID NOT ENGAGE IN ANY OTHER CONDUCT THAT COULD SIMILARLY CONFUSE OR MISLEAD UNDER SECTION 13–11a–3(1)(t)

■ ¶ 19 Finally, DeBry contends that Dex violated the UTIAA's "catch all" provision found in section 13–11a–3(1)(t), which prohibits a person from engaging "in any other conduct which *similarly* creates a likelihood of confusion or of misunderstanding."[12] Broadly speaking, MEL listings may result in some confusion or misunderstanding among consumers—some may presume that businesses with a local number have an office

**10.** *Webster's Third New International Dictionary* 2177 (1986).

**11.** Utah Code Ann. § 13–11a–3(1)(d) (2006).

**12.** Utah Code Ann. § 13–11a–3(1)(t) (2006) (emphasis added).

in the vicinity. Nonetheless, the statute requires that any confusion or misunderstanding must be of a magnitude *similar* to the related provisions.

¶ 20 In assessing whether conduct "similarly creates a likelihood of confusion or of misunderstanding," we note that the statute generally addresses "false front" business operations that attract customers by misrepresenting the nature, location, source, or quality of their goods or services. DeBry contends that MEL listings provide such a "false front" by permitting out-of-area businesses to use local numbers. While perhaps confusing to some, such a program does not invoke the type of deceptive misrepresentation contemplated under the statute. As we have noted, the Dex listings provide nothing more than a list of businesses willing to provide services to the calling area. That some consumers might presume more does not render the listings misleading or confusing. DeBry has not alleged that merely because the businesses are located outside the calling area, the nature, location, source, or quality of their services would be materially changed. As such, we cannot classify Dex's use of MEL numbers without addresses as confusing or misleading under section 13–11a–3(1)(t).

## CONCLUSION

¶ 21 For the above reasons, Dex has not acted in violation of the Utah Truth in Advertising Act (UTIAA). Dex's publications did not cause a likelihood of misunderstanding or confusion as to the source, sponsorship, approval, or certification of goods or services as required by Utah Code section 13–11a–3(1)(b). Dex did not use deceptive representations or designations of geographic origin in connection with goods or services pursuant to section 13–11a–3(1)(d). And Dex did not engage in any other conduct similarly creating a likelihood of confusion or misunderstanding pursuant to section 13–11a–3(1)(t). Consequently, we need not determine whether Dex would be exempt under section 13–11a–5(1).

¶ 22 Chief Justice DURHAM, Justice DURRANT, Justice PARRISH, and Justice NEHRING concur in Associate Chief Justice WILKINS' opinion.