2011 UT 77

In re Douglas James REINHART.

David L. Gladwell, Trustee, Appellant,

v.

Douglas James Reinhart, Appellee.

No. 20091087.

Supreme Court of Utah.

Dec. 16, 2011.

James A. Boevers, M. David Eckersley, Adam S. Affleck, Erin Margaret Stone, Salt Lake City, for appellant.

Duane H. Gillman, Michael F. Thomson, Salt Lake City, for appellee.

Justice PARRISH, opinion of the Court:

## INTRODUCTION

¶ 1 Utah Code section 78B–5–505[1] (the exemption statute) provides that a "retirement plan or arrangement that is described in Section 401(a)" of the U.S. Internal Revenue Code (the IRC) is exempt from a debtor's bankruptcy estate. UTAH CODE ANN. § 78B–5–505(1)(a)(xiv) (2008). In this case, we determine whether a retirement plan can be "described in Section 401(a)" of the IRC when it fails to fulfill that section's requirements for tax qualification. In other words, we determine whether the exemption statute requires that a retirement plan be tax qualified. We conclude that a retirement plan is "described in Section 401(a)" if it substantially complies with that section.

## BACKGROUND

■ ¶ 2 In December 1992, Dr. Douglas James Reinhart, in his capacity as a sole proprietor, established a Keogh plan[2] through Charles Schwab & Co. (Schwab). The plan included a money purchase pension plan component and a profit sharing plan component for himself and his employees. While Schwab remained the plan custodian, Dr. Reinhart served as the plan administrator and made contributions for his benefit after the plan's adoption.

¶ 3 On January 1, 1996, Dr. Reinhart incorporated his business as Douglas Reinhart, M.D., P.C. Upon incorporation, Dr. Reinhart ceased to be self-employed and became an employee of the P.C. However, Dr. Reinhart caused the P.C. to continue making contributions to his combination plan. Under the plan, Dr. Reinhart was required to make all eligible employees participants in the plan and to make contributions to the Keogh plan equaling 10 percent of each participant's annual compensation. Although Dr. Reinhart's wife, Janet Reinhart, was his only eligible employee, Dr. Reinhart failed to make Janet a participant under the plan.

¶ 4 On January 28, 2000, Dr. Reinhart filed a voluntary chapter 7 bankruptcy petition in the United States Bankruptcy Court for the District of Utah. On May 16, 2000, Dr. Reinhart filed amended schedules claiming that the funds in his Keogh plan were exempt from bankruptcy proceedings pursuant to Utah Code section 78B–5–505(1)(a)(xiv). At that time, Dr. Reinhart's Keogh plan was valued at $306,000. Subsequently, Dr. Reinhart filed an amended schedule showing an increase in the market value of the exemption to $333,835.65. The trustee of Dr. Reinhart's bankruptcy estate, David Gladwell (the Trustee), objected to Dr. Reinhart's claimed exemption, arguing that the exemption statute did not cover the plan because the plan was not technically tax qualified under IRC section 401(a). Both parties relied on Utah Code section 78B–5–505(1)(a)(xiv), which provides that "[a]n individual is entitled to exemption of . . . a retirement plan . . . that is described in Section 401(a)" of the IRC.

---

1. Because there have been no substantive changes to the relevant statutes that would affect this opinion, we cite to the current versions unless otherwise indicated.

2. A Keogh plan is a retirement plan in which a self-employed taxpayer can deduct from the taxpayer's annual income tax returns certain contributions made to the plan. *State Farm Life Ins. Co. v. Swift* (*In re Swift*), 129 F.3d 792, 794 n. 1 (5th Cir.1997) (citation omitted). It also allows a taxpayer to defer tax on contributions and gains until the taxpayer receives a distribution from the plan. *Id.*

¶ 5 The bankruptcy court determined that Dr. Reinhart's Keogh plan was not technically qualified under IRC section 401(a) due to four operational defects. According to the Trustee's expert witness, these defects included (1) a failure to add an eligible employee (Janet Reinhart), (2) a $10,400 loan made by the plan to Colleen Parker, (3) a failure to allocate retirement contributions to the money purchase plan portion of the Keogh plan, and (4) a contribution of excess funds in the amount of $1,455.75 for the year 2000. The Trustee's expert testified that these defects to the plan could likely be corrected under the IRS Employee Plans Compliance Resolution System (the EPCRS). The purpose of the EPCRS is to allow employers the opportunity to correct operational defects so that they can avoid IRS sanctions and other tax consequences. According to this expert testimony, although Dr. Reinhart's plan was not technically tax qualified due to the operational defects, it could be corrected through the EPCRS.

¶ 6 On May 15, 2008, the bankruptcy court entered oral findings and conclusions determining that the alleged Keogh plan was operationally in default. Despite this operational default, the bankruptcy court found that the plan was "nonetheless, described in Section 401(a)," and thus, the funds in the plan were exempt under Utah Code section 78B–5–505(1)(a)(x)(xiv). On June 8, 2008, the bankruptcy court entered an Exemption Order and the Trustee appealed to the U.S. District Court for the District of Utah. On February 6, 2009, the district court affirmed the Exemption Order. The Trustee subsequently appealed the district court's decision to the Tenth Circuit Court of Appeals. After hearing oral argument, the Tenth Circuit entered an order certifying to this court the state law question presented in the appeal. We have jurisdiction to answer a question of law certified by the Tenth Circuit pursuant to Utah Code section 78A–3–102(1).

## STANDARD OF REVIEW

¶ 7 When a federal court certifies a question of state law to this court, "we answer the legal questions presented without resolv[ing] the underlying dispute." *In re Kunz*, 2004 UT 71, ¶ 6, 99 P.3d 793 (alteration in original) (internal quotation marks omitted). Accordingly, "traditional standards of review do not apply." *Robert J. DeBry & Assocs., P.C. v. Qwest Dex, Inc.*, 2006 UT 41, ¶ 11, 144 P.3d 1079.

## ANALYSIS

¶ 8 The question presented for our review is whether a Keogh plan is "described in Section 401(a)" of the IRC when that plan fails to fulfill the section's requirements for tax qualification. Dr. Reinhart argues that the plain language of the exemption statute does not require a plan to be tax qualified. Specifically, he argues that the legislature's use of the term "described in" rather than the term "qualified under" indicates its intent to exempt Keogh plans that are not technically tax qualified under section 401(a) of the IRC. Additionally, Dr. Reinhart argues that the statute should be construed in his favor because state bankruptcy exemption statutes are liberally construed to protect debtors and their families from hardship.

¶ 9 In contrast, the Trustee argues that the exemption statute only exempts tax qualified plans because the only plans "described in Section 401(a)" are qualified plans. In support of his argument, he points to the headings in section 401 and subsection (a), which are titled "[q]ualified pension, profit-sharing, and stock bonus plans," and "[r]equirements for qualification." I.R.C. § 401(a) (2006 & Supp.2010).

¶ 10 "Pursuant to general principles of statutory interpretation, '[w]e ... look first to the ... plain language,' recognizing that 'our primary goal is to give effect to the legislature's intent in light of the purpose the statute was meant to achieve.'" *In re Kunz*, 2004 UT 71, ¶ 8, 99 P.3d 793 (alterations in original) (quoting *Evans v. State*, 963 P.2d 177, 184 (Utah 1998)). "Additionally, we assume that each term ... was used advisedly; thus the statutory words are read literally, unless such a reading is unreasonably confused or inoperable." *John Holmes Constr., Inc. v. R.A. McKell Excavating, Inc.*, 2005 UT 83, ¶ 12, 131 P.3d 199 (alteration in original) (internal quotation marks

omitted). But "[i]f we find the provision ambiguous ... we then seek guidance from the legislative history and relevant policy considerations." *Kunz*, 2004 UT 71, ¶ 8, 99 P.3d 793 (alterations in original) (internal quotation marks omitted). "In addition, we construe exemption statutes liberally ... in favor of the debtor to protect him and his family from hardship." *Id.* (alteration in original) (internal quotation marks omitted).

¶ 11 The exemption statute provides that: (1)(a) An individual is entitled to exemption of the following property:

. . .

(xiv) except as provided in Subsection (1)(b), any money or other assets held for or payable to the individual as a participant or beneficiary from or an interest of the individual as a participant or beneficiary *in a retirement plan or arrangement that is described in* Section 401(a), 401(h), 401(k), 403(a), 403(b), 408, 408A, 409, 414(d), or 414(e), [of the] Internal Revenue Code....

UTAH CODE ANN. § 78B–5–505(1)(a)(xiv) (2008) (emphasis added).

¶ 12 On its face, the exemption statute does not require that a retirement plan be tax qualified. Rather, it requires only that a retirement plan be "described in Section 401(a)." *Id.* The "described in" language could reasonably be interpreted to mean that the exemption statute incorporates the tax qualification requirements specified by IRC Section 401(a). As the Trustee correctly notes, the only plans "described in Section 401(a)" are qualified plans. *See* I.R.C. § 401(a). But the "described in" language could also be reasonably interpreted to exempt plans that are not technically tax qualified. Indeed, we assume the legislature used each word advisedly, *John Holmes Constr., Inc.*, 2005 UT 83, ¶ 12, 131 P.3d 199, and here

elected to use the phrase "described in" instead of one of the variations of the phrase "qualified under" commonly used in other state exemption statutes.[3] It is reasonable to conclude that this distinction is not without meaning.

¶ 13 The phrase "described in" is broader than the phrase "qualified under." The term "described" is used to provide a general characterization and means "picture in words," WEBSTER'S NEW COLLEGE DICTIONARY 390 (2007), whereas the term "qualified" means "having met conditions or requirements set." *Id.* at 1173. Additionally, the legislature's use of the term "described in" is consistent with the IRC, which makes it clear that a retirement plan does not necessarily lose its tax exempt status as a result of technical defects in the plan. For instance, retirement plans that are not in compliance with section 401(a) may be amended to qualify with retroactive effect. I.R.C. § 401(b) (2006). In fact, the IRS has created a program, known as the Employee Plans Compliance Resolution System (EPCRS), by which an employer can correct operational defects. Under this program, a retirement plan that is not technically tax qualified because of operational defects may retain its tax exempt status while the employer cures the defects. *See* Rev. Proc.2008–50; 2008–35 I.R.B. 464. Because the IRS provides employers the opportunity to cure operational defects without imposing the extreme sanction of disqualification, it would be inconsistent to construe the statute in such a manner that a debtor would forfeit his entire exemption as a result of an operational defect that is curable under the EPCRS. We conclude that both Dr. Reinhart's and the Trustee's interpretation of the "described in" language is reasonably supported by the language of the exemption statute. We therefore turn to legislative his-

---

**3.** *See* 11 U.S.C. § 522(d)(10)(E)(iii) (2006); ALAS-KA STAT. § 09.38.017(e)(3) (West 2010); IDAHO CODE ANN. § 55–1011(1) (2007); KAN STAT. ANN. § 60–2308(b) (2005); ME.REV.STAT. ANN. tit. 14, § 4422(13)(E)(3) (Supp.2010); MD.CODE ANN, CTS. & JUD. PROC. § 11–504(h)(1) (LexisNexis Supp. 2011); MISS.CODE ANN. § 85–3–1(e)(i) (2011); MO REV.STAT. § 513.430(1)(10)(e)(c) (West Supp. 2011); MONT.CODE ANN. § 31–2–106(3)(c) (2011); NEB.REV.STAT. ANN. § 25–1563.01(2) (LexisNexis 2004); NEV.REV STAT ANN. § 21.090(r)(4) (Lexis-Nexis Supp. 2009); N.J. STAT. ANN. § 25:2–1 (WEST SUPP. 2011); N.Y. DEBT. & CRED. LAW § 282(2)(e)(i) (McKinney 2011); N.D. CENT.CODE § 28–22–03.1(8)(e)(3) (Supp.2011); S.C.CODE ANN § 15–41–30(A)(11)(e)(iii) (Supp.2010); TENN. CODE ANN. § 26–2–111(1)(D)(iii) (Supp.2011); VT STAT. ANN. tit. 12, § 2740(16) (2002); W. VA.CODE ANN. § 38–10–4(j)(5)(C) (LexisNexis 2011).

tory and other relevant policy considerations to determine the legislature's intent.

■ ¶ 14 The bankruptcy code's overarching purpose is to help a debtor "obtain a fresh start." *Cf. Rousey v. Jacoway,* 544 U.S. 320, 325, 125 S.Ct. 1561, 161 L.Ed.2d 563 (2005). Consistent with its purpose, the bankruptcy code protects an individual debtor's future income stream by excluding "earnings from services [he] performed ... after the commencement of the case" from the bankruptcy estate. 11 U.S.C. § 541(a)(6). Additionally, Utah's statute exempts from the bankruptcy estate certain property interests, such as retirement plans, that function as a substitute for wages. Utah Code Ann. § 78B–5–505(1)(a)(x)(xiv) (2008); *see also id.* § 78B–5–505(1)(a)(ii)–(v) (exempting, among other things, the right to receive disability benefits, unemployment benefits, and veterans benefits). By exempting property that functions as a substitute for wages, the exemption statute ensures that debtors are provided "with sufficient support to prevent them from becoming public charges." *In re Kunz,* 2004 UT 71, ¶ 10, 99 P.3d 793. In furtherance of this policy, "we have historically deferred to the interests of debtors by liberally construing ambiguous exemption statutes in their favor." *Id.*

¶ 15 We are mindful of the competing policy interest that a debtor not use his retirement plan as a means of hiding assets from creditors. *See id.* ¶ 11. Indeed, section 401(a) of the IRC limits the amount of money that a taxpayer can contribute to a Keogh plan and still maintain its tax favored status. I.R.C. § 401(a)(16) (2006). By requiring that a plan be "described in" section 401(a), the legislature has explicitly recognized a creditor's interest by limiting the amount of assets that a debtor can convert into exempt retirement accounts. It is therefore unlikely that the legislature intended to exempt retirement plans that violate the very purpose of 401(a), i.e. a retirement plan that is being used as a means of tax avoidance would not be "described in Section 401(a)." But it is equally unlikely that the legislature intended to take away a debtor's entire retirement savings exemption merely because the plan did not strictly comply with section 401(a) by,

for example, exceeding the section's maximum contribution limit by ten dollars. Even the IRS does not prescribe such a harsh result and will allow a taxpayer to amend technical plan defects under the EPCRS with retroactive effect if the defect is not associated with tax avoidance transactions. Rev. Proc.2008–50 §§ 1.03 & 4.13; 2008–35 I.R.B. 464.

■ ¶ 16 Because we believe that the legislature did not intend for a debtor to lose his entire retirement exemption because of technical violations of 401(a), we hold that a retirement plan is "described in" section 401(a) if it substantially complies with the requirements of that section. And an unqualified plan is in substantial compliance with the provisions of 401(a) if the defect does not violate the underlying purpose of 401(a). *Cf. Aaron and Morey Bonds and Bail v. Third Dist. Court,* 2007 UT 24, ¶ 7, 156 P.3d 801 (noting that substantial compliance means "the policy behind the statute has ... been realized"). In other words, a plan substantially complies with 401(a) if the defect is not the result of an attempt to avoid tax. Requiring substantial compliance with 401(a) adequately reflects the legislature's intent that the "described in" language balance the interests of both the debtor and the creditor. Additionally, this interpretation is consistent with our policy of interpreting ambiguous exemption statutes liberally in favor of the debtor.

¶ 17 The dissent argues that there is no basis for the substantial compliance standard we propose. We disagree. Looking at section 401(a) in context of the IRC as a whole, and the treasury regulations underlying this section, reveals that section 401(a) does in fact espouse a substantial compliance standard. *See* I.R.C. § 401(b) (allowing a taxpayer to amend a retirement plan that does not comply with section 401(a) with retroactive effect); Treas. Reg. § 1.401(b)–1(a) (as amended in 2000). Consistent with this standard, the IRS has developed the EPCRS, which allows a taxpayer to correct technical errors in his retirement plan so long as the error is not related to a tax avoidance transaction. Rev. Proc.2008–50 §§ 1.03 & 4.13, 2008–35 I.R.B. 464. In other words, as long

as the plan substantially complies with section 401(a), the plan can be corrected. We therefore do not, as the dissent suggests, have to decide which provisions of section 401(a) are substantial and which ones are insignificant because the EPCRS has already made this determination.

¶ 18 The dissent also seems to make much of the fact that the debtor in this case never amended his retirement plan under the EPCRS. *Infra* ¶ 30. But the fact that a debtor's retirement plan fails to meet the requirements of section 401(a) at the time he files for bankruptcy does not necessarily mean that the debtor never intends to amend his plan to comply with those requirements. More likely, the debtor is unaware that his plan failed to meet the requirements of section 401(a) and did not realize the error until it was uncovered by his creditors during the bankruptcy proceeding. Were we to adopt the dissent's position and require strict compliance with section 401(a), a debtor would never be able to correct an error he discovered in his plan after his bankruptcy petition was filed because the debtor's estate and exemptions are determined at the time the bankruptcy petition is filed. 11 U.S.C § 541(a). But such a position is inconsistent with the exemption statute, which provides that retirement plans "described in" section 401(a) of the IRC are exempt from the bankruptcy estate. This section, when read in context of the IRC, allows a taxpayer an opportunity to cure defects in his retirement plan as long as the plan is in substantial compliance with its provisions. *See supra* ¶ 17; *see also In re Copulos,* 210 B.R. 61, 65 (Bankr.D.N.J.1997) (noting that the "IRS itself offers many layers of opportunity to cure any operational defects before imposing the extreme sanction of disqualification"), *aff'd in part, rev'd in part sub nom. First Indem. of Am. Ins. Co. v. Copulos,* No. 97–4283, 1998 WL 231224 (D. NJ. Feb. 24, 1998).

## CONCLUSION

¶ 19 The "described in" language of Utah Code section 78B–5–505(1)(a)(x)(xiv) includes retirement plans that are not technically tax qualified under IRC section 401(a). Accordingly, we hold that a retirement plan is "described in" the exemption statute when it is in substantial compliance with IRC section 401(a).

¶ 20 Chief Justice DURHAM, Associate Chief Justice DURRANT, and Justice NEHRING concur in Justice PARRISH's opinion.

Justice LEE, dissenting:

¶ 21 Douglas Reinhart's retirement plan failed on several grounds to meet the statutory requirements for a tax-deferred Keogh plan under section 401(a) of the Internal Revenue Code. And although the IRS has established mechanisms for taxpayers to seek to correct plan defects to avoid adverse tax consequences, Reinhart never employed such mechanisms to try to bring his plan into IRS compliance. Despite these problems, the court today concludes that Reinhart's plan may be exempt from bankruptcy proceedings on the ground that it is nonetheless a plan "described in" section 401(a) for purposes of the Utah exemption statute, UTAH CODE ANN. § 78B–5–505(1)(a)(xiv). The court bases its conclusion on the notion that a plan that fails to qualify under section 401(a) is still deemed to be "described in" that section if it is in "substantial compliance" with its provisions.

¶ 22 I respectfully dissent. First, I see no basis in the Utah exemption statute for the "substantial compliance" standard adopted by the majority. The exemption statute speaks of plans "described in section 401(a)," *id.,* and lacks reference to "substantial," "material," or any other limitation of the sort embraced by the court.

¶ 23 Second, I see no basis in the text or structure of the federal statute for distinguishing "substantial" Keogh plan requirements from insubstantial ones. Section 401(a) describes Keogh plans by setting forth their "[r]equirements for qualification," I.R.C. § 401(a) (2006 & Supp.2010). I see no non-arbitrary way for us to designate some federal requirements as "substantial" or to denigrate others as insignificant. Instead, I would read the Utah exemption provision's reference to plans "described in section 401(a)" to refer to all of the requirements of

federal law. That approach seems to me to be dictated by the structure of section 401(a) itself, which enumerates all federal requirements in an undifferentiated list.

¶ 24 I would resolve the interpretive question presented here on that basis, without resort to the canon of construction cited by the majority, much less the "policy considerations" that it deems instructive. *Supra* ¶ 13. The canon of interpreting exemption provisions liberally in the debtor's favor strikes me as problematic, as it states not a linguistic principle reflecting common usage or understanding, but a substantive preference for debtors over creditors.[1] Any decision to embrace such a preference is for the legislature, not the courts. Our role is to interpret and apply the policy judgment made by the legislature, not to implement one of our own choosing.

¶ 25 Some substantive canons are defensible on the ground that they reflect a long-standing, unequivocal policy preference that the legislature can be presumed to have legislated against.[2] The majority's preference for debtors over creditors is not such a canon. To the contrary, it's the sort of "canon" that finds a corresponding opposite elsewhere in our case law,[3] as the notion of a preference for "liberal" construction of a bankruptcy exemption in favor of a debtor could easily be recast as a contrary prefer-

ence for a "narrow" construction of a section 401(a) tax exemption.[4]

¶ 26 Even if the majority's canon were defensible, this would not be an appropriate case to invoke it. Substantive canons are properly implicated at the last stage of statutory construction, to resolve a virtual "tie" between the opposing constructions introduced by the parties.[5] They have no role at the front end, as even a "liberal" construction in the debtor's favor does not condone the rejection of statutory text that cuts in favor of creditors. I find the statutory text to cut quite clearly against a 401(a) exemption for a plan that fails to comply with the requirements of federal law, and I would accordingly reject the majority's approach even if I accepted a canon favoring debtors over creditors.

¶ 27 The court also roots its approach in the notion that both parties' constructions find plausible support in the "language of the exemption statute," *supra* ¶ 13, which it takes as a license to consider "relevant policy considerations" to inform its decision, *supra* ¶ 14. Both steps in that analysis are problematic. First, the fact that opposing parties proffer facially plausible constructions of the words of a statute can never be enough to abandon the quest for statutory meaning in favor of a subjective policy decision.[6] In any

1. *See Marion Energy, Inc. v. KFJ Ranch P'ship*, 2011 UT 50, ¶ 40, 267 P.3d 863 (Lee, J., dissenting) (noting the difference between linguistic and substantive canons and explaining that the latter "threaten to impinge on the policymaking domain of the legislature").

2. *Id.* ¶ 41

3. *See id.* ¶ 46 (decrying a different substantive canon as being "precisely at odds" with another and raising concerns about arbitrariness in the face of "self-canceling 'thrust-and-parry' rules").

4. *See Ivory Homes v. Utah State Tax Comm'n*, 2011 UT 54, ¶ 30, 266 P.3d 751 (applying a canon of construing tax exemption or refund statutes "narrowly against the taxpayer" on the ground that such provisions "are matters of legislative grace and should be construed in favor of the taxing entity where legislative intent is not clear"); *see also id.* ¶ 50 n. 18. (Durrant, J., dissenting) (criticizing the logic and application of this canon in the face of a counter-canon of interpreting tax statutes liberally in favor of the taxpayer).

5. *See id.* at ¶ 31 (majority opinion) (invoking the canon of narrow construction of tax credits "in favor of the taxing entity" only "where legislative intent is not clear"); *Marion Energy*, 2011 UT 50, ¶ 52, 267 P.3d 863 (Lee, J., dissenting) ("[B]efore we look to [substantive canons as] sources of 'guidance' it is our duty to determine the *best* interpretation of the statutory text in light of its surrounding linguistic and legal context.").

6. *See Olsen v. Eagle Mountain City*, 2011 UT 10, ¶ 13, 248 P.3d 465 ("The fact that the statutory language may be susceptible of multiple meanings does not render it ambiguous."); Felix Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum. L.Rev. 527, 527–28 (1947) ("When we talk of statutory construction we have in mind cases in which there is a fair contest between two readings, neither of which comes without respectable title deeds. A problem in statutory construction can seriously bother courts only when there is a contest between probabilities of meaning."); *see also* Frank H. Easterbrook, *The Role of Original Intent in Statutory Construction*, 11 Harv. J.L. & Pub. Pol'y 59,

case sufficient to command the attention of an appellate court with a discretionary docket, both sides will almost always have a plausible basis for their positions. Our role is to decide which of those competing constructions is most consistent with the language of the statute, not to fall back on our own sense of the "relevant policy considerations to determine the legislature's intent." *Supra* ¶ 13. So framed, the question presented in this case has a straightforward answer: Even if "described in" when read in isolation might be construed to encompass 401(a) "plans that are not technically tax qualified," *supra* ¶ 12, that construction is incompatible with the broader context of section 401(a) in the tax code. Section 401(a) enumerates an undifferentiated list of features of an exempt Keogh plan, and there is no reasonable basis in federal tax law for distinguishing "substantial" elements of that list from insubstantial ones.

¶ 28 The court's invocation of "relevant policy considerations," *supra* ¶ 13, is also troubling. I see no way to attribute to either the bankruptcy code or the Utah exemption statute an unqualified "overarching purpose" of giving a "fresh start" to debtors. *Supra* ¶ 14. (internal quotation marks omitted) Surely both statutes have a more nuanced purpose, one that balances both the interests of debtors in starting over and the interests of creditors in protecting their property. The majority acknowledges as much in conceding a countervailing "policy interest that a debtor not use his retirement plan as a means of hiding assets from creditors." *Supra* ¶ 15. Yet once that more complex picture is acknowledged, it becomes difficult to divine any "overarching purpose" that can guide our interpretive task beyond the purpose as expressed in the precise terms of the statutory text. It is that text that should guide us, not a one-sided generalization of the statute's "purpose" contrived by the judiciary.

¶ 29 The majority's holding is ultimately derived from its preference for the debtor's side of this policy balance at the expense of

creditors. That decision is problematic for all of the reasons noted above. But even assuming a one-sided statutory purpose of preserving a debtor's fresh start, I still see no basis for the "substantial compliance" standard adopted by the majority. That standard is not at all necessary to protect the debtor from "los[ing] his entire retirement exemption because of technical violations of [section] 401(a)." *Supra* ¶ 16. As the majority recognizes, the IRS has set up an administrative mechanism to allow taxpayers to seek to correct operational defects in a 401(a) plan. This mechanism, the Employee Plans Compliance Resolution System (EPCRS), is the exclusive method under federal law for addressing the policy problem that motivates the court's majority in this case. As the majority acknowledges, the EPCRS allows "a retirement plan that is not technically tax qualified because of operational defects" to "retain its tax exempt status while the employer cures the defects." *Supra* ¶ 13. The EPCRS system is thus the answer to the majority's policy concern. Debtors like Reinhart are not consigned to the whims of technical default. They can cure such defaults through EPCRS, and by properly doing so retain their exempt status despite operational defects.

¶ 30 It does not follow, however, that a plan whose defects are never cured under EPCRS procedures is still entitled to the benefit of the IRS's intent to allow taxpayers to avoid losing their "entire retirement savings exemption" under section 401(a). *Supra* ¶ 15. In fact, where a taxpayer fails to utilize the IRS's established mechanism for maintaining a tax exemption by curing statutory defects in a plan, the opposite conclusion seems evident: The plan's uncured defects are fatal under the IRS's regulatory scheme, and thus sufficient to sustain the conclusion that it is not a plan "described under 401(a)" according to federal law.

¶ 31 Put another way, we may assume it "unlikely that the Legislature intended to take away a debtor's entire retirement savings exemption merely because the plan did

60 (1988) ("People spend the money to come to court only when it is possible to draw conflicting

inferences from the words alone.").

not strictly comply with 401(a) by, for example, exceeding section 401(a)'s maximum contribution limit by ten dollars." *Supra* ¶ 15. And I agree that "the IRS does not prescribe such a harsh result," but instead "allow[s] a taxpayer to amend technical plan defects under the EPCRS with retroactive effect if the defect is not associated with tax avoidance transactions." *Supra* ¶ 13. But I disagree that our legislature addressed this concern by delegating to courts the task of making ad hoc distinctions between substantial defaults and insignificant ones. There is a mechanism in place for avoiding the harsh results of technical default, and a party who fails to pursue that mechanism lacks even a policy basis for complaining about his plight.

¶ 32 The courts are in no position to adopt our own standards dictating which federal requirements are substantial and which ones are not. If a plan fails to meet the federal requirements described in section 401(a) (as modified by the administrative mechanism of the EPCRS), that plan is not described in section 401(a) and it should be deemed not to sustain an exemption under Utah law.

¶ 33 The majority seeks to tie its "substantiality" standard to the "underlying purpose" it sees in section 401(a), *supra* ¶ 16, but the purpose the court identifies strikes me as incompatible with the federal 401(a) regime. I don't see how we can conclude that the IRS would endorse a plan that fails to comply with section 401(a) and is never brought into compliance under EPCRS. In such circumstances it seems apparent that the IRS *does* prescribe the result (disclaimed by the court) of "tak[ing] away" a taxpayer's 401(a) exemption. *Supra* ¶ 15. Such a result is not "harsh." It is the inevitable implication of a framework of legal requirements (including an administrative mechanism for curing initial defects) that are prerequisites for a tax exemption. At some point, the failure to abide by those requirements must result in the loss of the tax exemption. Otherwise the IRS's Keogh plan "requirements" would be nothing more than gentle suggestions.

¶ 34 The problems with the majority's substantiality standard are not resolved by the notion that "a plan substantially complies with 401(a) if the defect is not the result of an attempt to avoid tax." *Supra* ¶ 16. First, the majority's subjective-intent standard is incompatible with the Internal Revenue Code, which makes 401(a) qualification turn on compliance with the standards set forth in the Internal Revenue Code, not on whether a taxpayer subjectively intends to "avoid tax." Second, the tax-avoidance question is more than a little puzzling in this context. Presumably, anyone who establishes a 401(a) Keogh plan is engaged in an "attempt to avoid tax," and thus most any adaptation or change to the plan can be deemed to have a similar purpose. Such a purpose, moreover, is entirely lawful if it complies with federal law and unlawful only if it doesn't. All of which brings us back to the key legal question, which is whether the plan is one "described in" section 401(a). It seems to me that the answer to that question has to come back to the requirements set forth by statute and informed by the EPCRS mechanism, not to the subjective question of intent to avoid taxation.

¶ 35 The court seems to acknowledge the force of this analysis in seeking to moor its "substantial compliance" standard in the EPCRS "treasury regulations underlying" section 401(a). *Supra* ¶ 17. But fulfillment of the EPCRS regulations cannot literally be the majority's standard unless its concession on this point is really an agreement with my dissenting view. A Keogh plan satisfies the cited EPCRS regulations if and only if the plan is actually corrected in compliance with those regulations. Unless and until a plan administrator complies with the terms and conditions prescribed in EPCRS proceedings for curing plan defects, the plan is *not* in compliance (substantial or otherwise) under the treasury regulations cited by the majority.

¶ 36 Thus, I agree that a Keogh plan that *is actually corrected* through the EPCRS process would be exempt as "described in" section 401(a). *Supra* ¶ 17. Such a plan would, at that point, be cured of any defects from the IRS's perspective and thus presumably would "be considered as satisfying the requirements" of section 401(a) *nunc pro*

*tunc.*[7] And the availability of such correction should fully satisfy the majority's concern that "a debtor would never be able to correct an error he discovered in his plan after his bankruptcy petition was filed." *Supra* ¶ 18. That concern seems specious, despite the fact that "the debtor's estate and exemptions are determined at the time the bankruptcy petition is filed." *Supra* ¶ 18 (citing 11 U.S.C. § 541(a)(2006)). The majority's concern disappears if the cited code and regulatory provisions mean what they say—if a 401(a) plan corrected through the EPCRS mechanism is deemed compliant "for the period beginning with the earlier of the date on which there was adopted or put into effect any amendment which caused the plan to fail to satisfy" plan requirements. I.R.C. § 401(b) (2006). If an EPCRS–corrected plan is deemed to satisfy section 401(a) *nunc pro tunc*—back to the date of any defect—then the 401(a) exemption is valid under the bankruptcy code as of the "time the bankruptcy petition is filed," *supra* 18, and concern for unfair surprise to the debtor evaporates.

¶ 37 The proceedings in the bankruptcy court could easily accommodate such a resolution. When a debtor's claimed 401(a) exemption is met with an objection identifying an operational defect in the plan, the debtor can then pursue an EPCRS correction under applicable regulations.[8] And if and when any challenged defects are cured through the EPCRS procedure, the bankruptcy court can then overrule the objection and uphold the exemption (or, if the EPCRS correction fails, sustain the objection). All of this can (and in my view should) proceed on the basis of an actual EPCRS proceeding, not a hypothetical one as the majority seems to contemplate.

¶ 38 Instead of deeming an EPCRS-corrected plan as exempt, the majority adopts a standard that requires courts to speculate about whether any Keogh-plan defects at the time of a bankruptcy filing *could have been cured* through EPCRS procedures. I have no idea how a court is supposed to perform that speculative analysis, particularly where EPCRS corrections require compliance with remedial measures and we have no idea what those measures would be absent an actual EPCRS proceeding.[9] Thus, although the majority understandably protests otherwise, its approach will necessarily require courts to make their own judgments about "which provisions of section 401(a) are substantial and which ones are insignificant." *Supra* ¶ 17. Absent an actual EPCRS proceeding, it is simply not true that "the EPCRS has already made this determination." *Supra* ¶ 17. That determination, rather, is made only in an actual EPCRS proceeding, and it is only such a proceeding that would tell us whether it is appropriate to ignore "technical errors" in a 401(a) plan as "insubstantial." [10]

7. *See* I.R.C. § 401(b) (2006) (providing that a plan is "considered as satisfying the requirements of subsection (a)" for any period "beginning with the earlier of the date on which there was adopted or put into effect any amendment which caused the plan to fail to satisfy such requirements" if "all provisions of the plan which are necessary to satisfy such requirements are in effect" within the prescribed time "as the Secretary may designate" and "have been made effective for all purposes for the whole of such period").

8. The majority suggests that a debtor may be "unaware that his plan failed to meet the requirements of section 401(a)" at the time of a bankruptcy filing, *supra* ¶ 18, but any such claim of ignorance dissipates upon the assertion of an objection (as in this case). Reinhart surely knew of the operational defects in his 401(a) plan when the trustee asserted his objection, yet he still to this date has failed to seek any correction through EPCRS procedures. To me that is telling, and it thoroughly undermines the concerns of surprise trumpeted by the majority.

9. Rev. Proc.2006–27 § 6.02(2), 2006–22 I.R.B. 955 ("The correction should be reasonable and appropriate for the failure. Depending on the nature of the failure, there may be more than one reasonable and appropriate correction for the failure.").

10. I do not envy the task of the federal courts in resolving this case in the wake of our decision. The defects in Reinhart's plan include his failure to cover one of his employees despite the statutory requirement of coverage for all eligible employees, I.R.C. § 401(a)(3); and Reinhart's unauthorized use of the plan to make a $10,400 contribution to fund an automobile loan for Colleen Parker, in contravention of the requirement that plan contributions be made exclusively through Charles Schwab & Co. as the Keogh plan custodian. The majority opinion gives no manageable yardstick for measuring the substantiality of these defects, and on the face of them I see no basis for dismissing them as insignificant. Instead of sending this case to the federal courts for a subjective evaluation of that question, I

¶ 39 As the majority indicates, our task in a certified case is a narrow one—to " 'answer the legal questions presented without resolv[ing] the underlying dispute,' " *supra* ¶ 7 (quoting *In re Kunz*, 2004 UT 71, ¶ 6, 99 P.3d 793). Yet I can't help but wonder whether the answer given to the Tenth Circuit's certified question today is sufficient to provide a manageable rule of decision. The "substantial compliance" standard handed down by the court leaves much in the subjective hands of the court that applies it. I respectfully dissent because I think the Utah exemption statute leaves no room for courts to distinguish substantial 401(a) requirements from insubstantial ones. I would hold instead that a retirement plan is "described in" section 401(a) only if it meets the requirements for such a plan under federal law.

would deem Reinhart's Keogh plan exempt if and only if he corrects any defects in his plan through EPCRS procedures. Unless and until he does so, I see no legal or logical basis for deeming these and other defects insignificant, particularly in light of trial testimony that EPCRS compliance would require, at a minimum, funding of approximately $30,000 for the failure to include the missing employee in the plan.