In re ST. JOHNSBURY TRUCKING COMPANY, INC., Debtor.

In the Matter of the Bankruptcy Court's October 27, 1994 Order Commencing Contested Matter to Determine Whether Sanctions Should be Imposed Against BANKERS TRUST COMPANY, Burton M. Freeman, O'Melveny & Myers, and Adam C. Harris, Respondents.

No. 93 B 43136 (FGC).
No. 94 Civ. 7970 (JSM).

United States District Court,
S.D. New York.

Dec. 9, 1994.

Order Denying Application for Withdrawal of Writ of Mandamus Jan. 9, 1995.

Robert B. Fiske, Jr., Davis Polk & Wardwell, New York City, for petitioners Burton M. Freeman and Bankers Trust Co.

Michael A. Cooper, Sullivan & Cromwell, New York City, for petitioners O'Melveny & Myers and Adam C. Harris.

Richard Levy, Marcus Montgomery Wolfson P.C., New York City, for Official Committee of Unsecured Creditors of St. Johnsbury Trucking Co.

James L. Sigel, Ropes & Gray, Boston, MA, for William M. Clifford.

Spencer Knapp, Dinse, Erdmann & Clapp, Burlington, VT, for Winthrop Stimson Putnam & Roberts and Leo T. Crowley.

Richard N. Tilton, Greenberg Traurig Hoffman Lipoff Rosen & Quentel, New York City, for St. Johnsbury Trucking Co. and debtor in possession.

## MEMORANDUM OPINION AND ORDER

MARTIN, District Judge:

Bankers Trust Company (Bankers) seeks review of an order of the Bankruptcy Court which strips Bankers of its attorney-client privilege. The Bankruptcy Judge based his ruling on a determination that Bankers had committed a fraud on the court in pursuing a counterclaim which it knew to be without merit. Thus the court found that the crime/fraud exception to the attorney-client privilege applied and, therefore, ordered Bankers to produce a large volume of documents that would otherwise be subject to a claim of privilege. The issue before the Court is whether the Bankruptcy Judge had an adequate basis for reaching the conclusion that Bankers had engaged in fraudulent conduct which vitiated the privilege.

In order to understand the issues presented, some background facts are necessary. Bankers is a major creditor of St. Johnsbury Trucking Company, Inc., which has filed for protection under Chapter 11. In the course of the bankruptcy proceedings, the Creditors Committee commenced an adversary proceeding seeking to challenge Bankers' security interest in St. Johnsbury's receivables. The Committee contended that Bankers had failed to perfect its interest in the receivables because it had not filed the appropriate UCC statement in Vermont where St. Johnsbury maintained its receivable records. In its answer to this claim, Bankers asserted a counterclaim against the Company and its chief executive officer, William M. Clifford, alleging that, in connection with the Bankers' financings, Clifford had signed a certificate representing that the Company's "chief place of business and executive office and the office where [it] keeps its records concerning the Receivables" was located in Holliston, Massachusetts. Bankers alleged that "To the extent Bankers does not possess a perfected lien ... Bankers has been materially injured as a result of the false representation and warranty made by William Clifford."

The Bankruptcy Court's ruling that this claim was a fraud on the court was precip-

itated by the inadvertent production of a privileged document from Bankers' files. The document, a memorandum dated January 10, 1994 from a lawyer for Bankers, indicated that Bankers had been aware for some time before the commencement of the bankruptcy proceedings that St. Johnsbury "maintained an accounts processing and storage facility in St. Johnsbury, Vermont."

When this memorandum was brought to the attention of the Bankruptcy Judge, he expressed the view that this was prima facie evidence that Bankers had attempted to perpetrate a fraud on the court. On October 19, 1994, the court conducted a hearing at which he heard argument from counsel. At the conclusion of that hearing the Judge again reiterated his conclusion that a prima facie showing of fraud had been made and announced that he would hold a hearing to determine whether sanctions should be imposed on Bankers and its counsel. In connection with the preparation for that hearing, the Court ordered full discovery against Bankers and its counsel and "terminated" all privileges including "the attorney-client privilege and the work product protection and any claim of privilege concerning trial preparation material . . . ." (October 22, 1994 Order, ¶ 4)

■■■ As a threshold matter, the parties raise the question of whether the Court has jurisdiction to review what is, in effect, a discovery order. In bankruptcy matters, this Court is governed by the same considerations of appellate jurisdiction as apply to the Circuit Court's review of this Court's decisions. The relevant case law in the Second Circuit indicates that in situations such as this the Court "will exercise mandamus review of discovery orders relating to claims of privilege where: (i) an issue of importance and first impression is raised; (ii) the privilege will be lost in a particular case if review must await final judgment; and (iii) immediate resolution will avoid the development of discovery practices or doctrine undermining

the privilege." *Chase Manhattan Bank v. Turner & Newall, PLC,* 964 F.2d 159 (1992). *See also In re Von Bulow,* 828 F.2d 94 (2d Cir.1987).

It could be argued that this case does not raise an issue of first impression because the Bankruptcy Judge articulated a recognition of the appropriate standard to be applied in determining whether the crime/fraud exception applies. However, an analysis of the fact indicates that the basis issue presented is whether the crime/fraud exception may be invoked simply because the Court concludes that the party has asserted a claim that is without merit. This is an issue of first impression. Moreover, the breadth of the order's termination of the privilege also appears to be unprecedented and appropriate for review. There can be no question that the second and third criteria set forth in *Chase Manhattan* are met here and, thus, mandamus review is appropriate.

One of the problems presented in reviewing the Bankruptcy Court's order is determining what the record was before the Bankruptcy Judge on which the determination was made that a fraud had been committed. The specific event that precipitated the Bankruptcy Judge's action was the production of the January 10, 1994 memorandum. Although, during the October 19th hearing, the Judge referred to several other events that occurred over the course of the bankruptcy proceedings, the formal order which he issued referred specifically only to the January 10th memo and a brief and affidavit which relate to that memorandum. From a review of the October 19th transcript it appears that the Bankruptcy Judge had from the outset been skeptical of Bankers' cross-claim and that the disclosure of the January 10th memo was in his words "the straw that broke the camel's back." (October 19 Tr. at 148)

■■ Before turning to a discussion of the privilege claim, it is important to note what is not before the court. The issue whether Bankers should be sanctioned for filing a meritless claim and the question whether Bankers should be sanctioned because of its

responses to various discovery requests have not been decided by the Bankruptcy Judge and are, therefore, not presented for review. The sole issue presented here is whether the Bankruptcy Court was justified in stripping Bankers and its counsel of all privileges arising from the attorney-client relationship.

■ Consideration of this question must start with a recognition that "the attorney-client privilege is of crucial importance to our jurisprudence, and its derogation is not to be undertaken lightly." *United States v. Davis*, 1 F.3d 606, 610 (7th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1216, 127 L.Ed.2d 563 (1994).

■ While the attorney-client privilege does not attach to communications that are part of a crime or a fraud, the Second Circuit had made clear that

> a party seeking to overcome the attorney-client privilege with the crime-fraud exception must show that there is 'probable cause to believe that a crime or fraud ha[s] been committed and that the communications were in furtherance thereof.'

*In re John Doe Inc.*, 13 F.3d 633, 637 (1994) (citations omitted).

It should be noted that "probable cause" is the same standard that applies in determining whether a search warrant may issue. This is entirely appropriate for in each case the result of the finding is to justify a serious invasion into matters that otherwise would remain private.

Here the facts before the Bankruptcy Court did not establish probable cause to believe that Bankers had been guilty of a crime or fraud. It is clear that the Bankruptcy Judge found Bankers counterclaim to be without merit and at least prima facie subject to sanctions. But filing an even frivolous claim is not the same as engaging in fraud.

Fraud connotes intentional concealment and the record does not support a finding

that Bankers concealed any relevant facts. Indeed, the brief of the Creditors Committee states: "a multitude of documents, all of which were prepared by employees of Bankers contain statements which clearly indicate that Bankers unquestionably knew that St. Johnsbury Trucking maintained the vast majority of its accounts receivable operations at its offices located in St. Johnsbury." The brief then refers to "numerous documents produced by Bankers which contain statements concerning Bankers' knowledge of the Debtor's records of accounts receivable." (See William M. Clifford's Opposition to Petitioner's Motions, p. 10)

While the fact that Bankers produced these documents may draw into question the merits of their cross-claim, it belies an intent to deceive which is the hallmark of a fraud. Nothing in the record indicates that Bankers attempted to mislead the court or its adversaries about the state of its knowledge of the location of St. Johnsbury's records.* Indeed, although the cross-claim alleges that Bankers relied on the representation signed by Clifford, it does not allege that Bankers was unaware of the existence of receivable records in Vermont. It alleges only

> "To the extent Bankers does not possess a perfected lien ... Bankers has been materially injured as a result of the false representation and warranty made by William Clifford."

Thus, the cross-claim on its face does no more than assert that because Clifford signed a representation and warranty as to the location of the principal receivable records, Bankers was entitled to rely on the representation and, therefore, he and the company would be liable to Bankers if it was ultimately established that the principal receivable records were in Vermont. Whether this legal theory would prevail if the fact

---

* While certain of Bankers' responses to discovery requests might be considered less than forthcoming and may even merit sanctions, they do not provide a basis for a finding of intentional fraud. In light of the document disclosure made by Bankers, it is apparent that these discovery responses reflect only the all too common and undesirable practice of lawyers to attempt to play word games in responding to discovery requests.

finder were to conclude that Bankers was aware of sufficient facts to put it on notice that the representation and warranty were in error is not the question before the court. The issue here is does the mere assertion of such a claim constitute fraud. In the absence of facts showing that Bankers somehow concealed evidence concerning its knowledge of the location of the receivable records, the answer to the question is clearly no.

For the foregoing reasons, the writ of mandamus is granted and the Bankruptcy Court is directed to vacate those provisions of its October 22, 1994 Order terminating the privileges of Bankers Trust and its counsel.

**SO ORDERED.**

### MEMORANDUM ORDER ON APPLICATION

By Memorandum Opinion and Order dated December 9, 1994, this Court issued a writ of mandamus directing the Bankruptcy Court to vacate certain provisions of its order of October 22, 1994 terminating the privileges of Bankers Trust Company and its counsel. Counsel for one of the unsuccessful parties in that proceeding now asks the Court to withdraw its Order and permit the bankruptcy judge to answer a petition for mandamus, citing Federal Rule of Appellate Procedure 21(b). That application is denied.

By their terms, the Federal Rules of Appellate Procedure do not apply to proceedings in the district court even on appeal from decisions of the bankruptcy court. Fed. R.App. p. 1. Moreover, as the Second Circuit has noted,

> Rule 21(b) is directed toward a litigant seeking a writ of mandamus and does not prohibit [the Court] in exercise of [its] powers under the All Writs Act, 28 U.S.C. § 1651, from treating an appeal by a litigant as a petition for a writ of mandamus.

*In re Repetitive Stress Injury Litigation,* 35 F.3d 637, 639 (2d Cir.1994).

Although in that case, the circuit court determined that "the better course would have been to treat the appeal as a motion for leave to file a petition for a writ of mandamus," that does not appear to be the better course in this case. *Id.* at 640.

It may well be that in *In re Repetitive Stress Injury Litigation,* in which a discretionary ruling of the district court was in issue, an expression of the district judge's reasons for exercising his discretion may have been helpful to the circuit court. Such is not the case here where there has simply been a reversal of the bankruptcy court's ruling on a matter of law. As the District of Columbia Circuit Court of Appeals observed in *United States v. King*

> In the federal courts, when the purpose of mandamus is to secure a ruling on the intrinsic merits of the judicial act, the judge need not—and desirably should not—be named as an active party but a most only as a nominal party with no real interest in the outcome.

482 F.2d 768, 772 (C.A.D.C.1973); *see also A. Olinick & Sons v. Dempster Bros., Inc.,* 365 F.2d 439, 442 (2d Cir.1966) ("Although in mandamus the trial court is named as a party, where the writ is simply sought to review the merits of its transfer order, its participation is purely nominal.")

**SO ORDERED.**