**In re Leonard L. RIENDEAU, Debtor.**

**Leonard L. Riendeau, Debtor–Appellant,**

v.

**John R. Canney, Trustee–Appellee.**

No. 2:01–CV–240.

United States District Court,
D. Vermont.

Oct. 11, 2002.

Kathleen Walls, Esq., Middlebury, VT, for Debtor/Appellant.

John R. Canney, III, Esq., Rutland, VT, for Appellee.

## OPINION AND ORDER

SESSIONS, Chief Judge.

This is an appeal from a decision of the Bankruptcy Court sustaining the Chapter 7 Trustee's objection to Debtor Riendeau's claimed exemption of certain pre-petition income from a bankruptcy proceeding. The Debtor has asked this Court to reverse the ruling of the Bankruptcy Court. For the reasons described below, the Court affirms the Bankruptcy Court's decision.

## I. Background

Leonard L. Riendeau, another Vermont family dairy farmer in dire straits, filed for Chapter 7 bankruptcy on December 19, 2000. He elected, under 11 U.S.C. § 522(b)(2), to use the exemptions available under applicable nonbankruptcy federal and Vermont law. Along with his bankruptcy petition, Riendeau filed a Schedule C, listing several of his personal property items in order to claim them as exempt in line with this law.

Later that month, after the filing, he received a check in the amount of $11,210.03 as payment received for milk his farm produced during that month. From that amount, $3,686.95 was automatically deducted for farm operation expenses. None of it was withheld for income tax purposes. The Debtor also received, post-petition, a federal subsidy compensating farmers for lower than expected milk prices during the year 2000. This check was for $11,490, and no income tax was withheld from it either. Both checks were received in connection with the Debtor's pre-petition business as a dairy farmer.

After receiving the two checks, the Debtor amended his Schedule C to list them, pursuant to Vt. Stat. Ann. tit. 12, § 3170(b)(1) (Lexis Supp.2001), as exempt at a rate of "75% of his weekly earnings, or 30 times the federal minimum hourly wage, whichever is determined to be greater."

On April 20, 2001, the Trustee filed an objection to the Debtor's claimed exemption of both checks, arguing that § 3170 does not apply to the case at hand. Specifically, the Trustee argued that: 1) § 3170 exemptions apply solely to judgment debts; 2) § 3170 only pertains to the garnishment of future earnings to pay an existing debt; and 3) the Debtor's milk subsidy check did not constitute "disposable earnings" as defined under § 3170. *In re Riendeau*, No. 00–11440–63, 2001 WL 34050699 at *1 (Bankr.D.Vt. July 16, 2001)

(Order Sustaining Trustee's Objection). In his Supplemental Response to the Trustee's Objection to Exemption [Dkt. # 53–1], the Debtor asserted that he is entitled to an automatic, self-executing federal wage exemption in bankruptcy, under the federal garnishment limitation provision of the Consumer Credit Protection Act (CCPA), 15 U.S.C. § 1601 *et seq.*

A hearing on the Trustee's Objection was held on June 19, 2001. The Bankruptcy Court sustained it on the grounds that: 1) § 3170 "provides for the exemption from the trustee process and is not a bankruptcy exemption" and 2) the Debtor had "not amended his Schedule C further to claim an exemption under any other purported exemption statute, including 15 U.S.C. § 1673." *In re Riendeau*, No. 00–11440–63, 2001 WL 34050699 at *1.

## II. Jurisdiction

This court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 158(a) and Vermont Local District Court Rule 83.9(a)(1) which give the Federal District Courts authority to hear appeals from final judgments, orders and decrees of bankruptcy judges entered in "core proceedings" (cases and proceedings involving purely bankruptcy matters).

## III. Standard of Appellate Review

A bankruptcy judge's findings of fact may not be set aside unless they are determined to be clearly erroneous. Fed. R. Bankr.P. 8013; *In re Manville Forest Prods. Corp.*, 896 F.2d 1384 (2d Cir.1990); *Cassani v. Glinka (In re Cassani)*, 214 B.R. 459, 462 (D.Vt.1997). Questions of law in a bankruptcy proceeding are reviewed de novo. *U.S. Rural Housing & Comm. Dev. Serv. (RECDS) v. Loper*, 222 B.R. 431, 434 (D.Vt.1998) (citing *In re Manville Forest*, 896 F.2d at 1388). The

questions raised in this appeal are questions of law and will be reviewed de novo.

## IV. Discussion

Two questions have been raised in this appeal. The first is whether Vt. Stat. Ann. tit. 12, § 3170 applies as an exemption in the bankruptcy context. The second is whether the Debtor is entitled to an automatic, self-executing federal wage exemption under a federal garnishment limitation provision of the Consumer Credit Protection Act (CCPA), 15 U.S.C. § 1601 *et seq*, despite raising it for the first time in his Supplemental Response to Trustee's Objection to Exemption.

### a. Applicability of § 3170 in Bankruptcy

Riendeau, as a Chapter 7 debtor, is afforded any exemption available under "state and local law that is applicable on the date of the filing of the petition." 11 U.S.C. § 522(b)(2); *accord Parrotte v. Sensenich (In re Parrotte)*, 22 F.3d 472, 474 (2d Cir.1994). The Trustee bears the burden of proving that the exemption claimed is improper and should be disallowed. Fed. R. Bankr.P. 4003(c).

A strong and fundamental public policy underlying Vermont's exemption statutes is to protect a debtor against total poverty, without excessively restricting a creditor's right to collect debts. David W. Lynch, *Vermont's New Debtor Exemption Statute*, 13 Vt. L.Rev. 609 (Winter 1989). To effectuate this policy, Vermont courts have long held that exemption statutes "ought to receive a liberal construction in favor of the debtor." *Webster v. Orne*, 45 Vt. 40, 42 (1868). However, Vermont's tradition of so constructing has always been "within the parameters of [the exemption statute's] plain meaning." *See In re Christie*, 139 B.R. 612, 613 (Bankr.D.Vt. 1992). Indeed, the Bankruptcy Court has

consistently applied plain meaning language interpretations to its rulings concerning exemptions in the bankruptcy context. *See, e.g., In re Gabelhart,* 138 B.R. 425, 426 (Bankr.D.Vt.1992); *see also In re Thibault,* No. 90–00100, 1992 WL 77619 (Bankr.D.Vt. April 8, 1992) (noting that "[w]hen a statute's language is plain, 'the sole function of the courts is to enforce it by its terms'" quoting *Caminetti v. U.S.,* 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442 (1917)).

■ Section 3170 reads, in pertinent part:

(a) No order approving the issuance of trustee process against earnings shall be entered against a judgment debtor who was, within the two month period preceding the hearing provided in section 3169 of this title, a receipt of assistance from the Vermont department of prevention, assistance, transition, and health access. The judgment debtor must establish this exemption at the time of hearing.

(b) The earnings of a judgment debtor shall be exempt as follows:

(1) seventy-five percent of the debtor's weekly disposable earnings, or 30 times the federal minimum hourly wage, whichever is greater.

(Lexis Supp.2001). The plain language of § 3170 alone, through its use of terms such as "judgment debtor" and the fact that it clearly establishes trustee process as its context, precludes its applicability to bankruptcy.[1]

Relevant Vermont case law, although meager, underscores § 3170's plain meaning, and demonstrates that it was enacted to establish the legal process by which a judgment debtor's earnings are sought to be garnished by a judgment creditor. *See Olson v. Townsend* 148 Vt. 135, 530 A.2d 566 (1987) (noting the purpose of trustee process as such).[2]

■ In coordination with the "plain meaning" rule, Vermont courts have also indicated that a correct interpretation of the statute in question must further the legislative scheme—in this case Vt. Stat. Ann. tit. 12, §§ 3167–3172—of which the provision at issue is a part. *See Holmberg v. Brent,* 161 Vt. 153, 155, 636 A.2d 333 (1993); *see also Davis v. Hunt,* 167 Vt. 263, 267, 704 A.2d 1166, 1169 (1997). The statutory scheme that surrounds § 3170(b) highlights the notion that it applies to trustee process and not in the bankruptcy context. For example, § 3170(c) states that "after hearing, the court shall enter an appropriate order which may provide for repetitive withholding of earnings...." This language is prospective. It assumes the garnishment of future wages, which does not comport with the discharge aspect of bankruptcy. Indeed, extending

1. It is worth noting that the Vermont trustee process statute was modeled after and is the state counterpart to the federal Consumer Credit Protection Act (CCPA), 15 U.S.C. §§ 1671–1677. *See Olson v. Townsend,* 148 Vt. 135, 137, 530 A.2d 566, 568 n. 2 (1987); *see also* Vt. Stat. Ann. tit. 12, §§ 3168–3172 (Supp.1999). The federal bankruptcy exemptions available under 11 U.S.C. § 522 do not include those articulated under the CCPA. *See* 11 U.S.C. § 522. Moreover, the Supreme Court has indicated that the enactment of the federal garnishment limitation statute was intended to assist persons in efforts to avoid bankruptcy and not to alter drastically the delicate balance of a debtor's protections and obligations during a bankruptcy proceeding. *Kokoszka v. Belford,* 417 U.S. 642, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974).

2. The Vermont Supreme Court has used similar language to that of § 3170 in defining trustee process "[a]s a device by which a judgment creditor may, by process, reach certain obligations due a judgment debtor." *First Wisconsin Mortg. Trust v. Wyman's, Inc.,* 139 Vt. 350, 353, 428 A.2d 1119, 1122 (1981).

§ 3170 in the bankruptcy context would be inconsistent with the "fresh start" policy underlying the bankruptcy process.

Other provisions in the trustee process scheme also support limiting § 3170(b)'s application to trustee process. Vt. Stat. Ann. tit. 12, §§ 3167–3172 (Supp.2001). Section 3167 states that the purpose of trustee process is "the enforcement of a money judgment in any civil action...." and that it cannot commence "until the judgment becomes final." Section 3169 indicates that the purpose of the "hearing" mentioned in § 3170(a) is to determine whether "a judgment debtor has neglected or refused to pay or make reasonable arrangements to pay a money judgment in any civil action...." Section 3171 allows a judgment creditor to serve an order for garnishment on the trustee of the funds to be garnished. Finally, § 3172 prohibits any employer from firing an employee based on such an order or garnishment.

Taken as a whole, these provisions do not contemplate the process by which assets are assembled into a bankruptcy estate. The exclusive purpose of this statutory scheme is instead to limit the periodic garnishment of future wages after final judgment in a civil action.

The Debtor argues that such an application of the plain language rule would lead to absurd and irrational consequences in this case. He reasons that few of Vermont's traditionally applied bankruptcy exemptions could ever apply under the reasoning advanced by the Bankruptcy Court because these statutes do not specifically mention their applicability in bankruptcy. The Debtor is correct that Vermont law

contains a number of exemption statutes, many of which do not specifically indicate that they apply in the bankruptcy context.[3] But whether these provisions specifically mention bankruptcy is unimportant. What is important is that they are not part of a particular scheme that would limit their applicability in the way that the trustee process regime does to § 3170(b). The traditionally applied exemptions apply instead in the more general context of "attachment" or "execution." In contrast, as indicated above, the trustee process exemptions have specific conditions and appear within a coordinated scheme that is distinct and separate from bankruptcy proceeding.

Other bankruptcy courts have specifically rejected claimed exemptions under that state's trustee process statute in a bankruptcy proceeding. *See In re Damast,* 136 B.R. 11 (Bankr.D.N.H.1991) (noting that such exemptions are only applicable in the context of trustee process); *see also In re Kingsbury,* 124 B.R. 146 (Bankr.D.Me. 1991) (stating that a bankruptcy debtor could not use such a statute to expand his exemptions during a bankruptcy proceeding) *overruled on unrelated grounds by Taylor v. Freeland & Kronz et al.,* 503 U.S. 638, 112 S.Ct. 1644, 118 L.Ed.2d 280 (1992). These courts have likewise distinguished trustee process exemptions as restrictions uniquely applicable to wage garnishment and not bankruptcy.

■ In sustaining the Trustee's Objection, the Bankruptcy Court concluded that, "upon filing for bankruptcy protection, a debtor's rights and remedies are controlled by the Bankruptcy Code and applicable

---

**3.** Among others, the exemptions typically used in the bankruptcy context include: Vt. Stat. Ann. tit. 12, § 2740 (Supp.2001) (personal property exemption statute protects a significant quantity of an individual's property from attachment and execution); Vt. Stat. Ann. tit. 8, § 4478 (1993) (absolute exemption for any benefits received from any benefit society); Vt. Stat. Ann. tit. 21, § 681 (1987) (workers' compensation exempt); and Vt. Stat. Ann. tit. 27, § 101 (Supp.1998) (homestead exempt up to $75,000).

state and federal property exemption statutes, and not governed by restrictions on garnishment set forth in a state law applicable to judgment debtors and the issuance of trustee process." For the reasons set forth above, the Court agrees with this conclusion.

### b. Claim of Exemption under 15 U.S.C. § 1673

██ The Court now turns to the second question raised by the Debtor. Because he has not amended his Schedule C to claim an exemption regarding these checks under the CCPA, Riendeau has asserted that its federal wage garnishment limitation provision entitles him to an automatic, self-executing federal wage exemption.

As an initial matter, there is some question as to whether this issue has been preserved for appeal. The Court notes that the Debtor did raise this claim well before the Bankruptcy Court filed its Order. It has been fully briefed by the Trustee on appeal. Moreover, the Bankruptcy Court, although it expressed some reluctance to fully address the claim, did pass on its merits in a footnote. So, in the interest of finality and because the Second Circuit has noted that an appellate court has discretion to review an issue even where it is unclear whether the lower court has passed on it, the Court will address this claim. *See Austin v. Healey*, 5 F.3d 598, 601 (2d Cir.1993); *see also In re St. Johnsbury Trucking Co., Inc.* 176 B.R. 122, 124 (S.D.N.Y.1994) (stating that rules of appellate jurisdiction that apply to the Second Circuit's review of the District Courts, apply in bankruptcy appeals such as this one).

Debtor's argument rests on the fact that the CCPA's garnishment restrictions apply automatically in bankruptcy. The case that the Debtor uses to support this contention in his Reply Brief, *First Natl. Bank v. Robinson (In re Robinson)*, 240 B.R. 70, 95 (Bankr.N.D.Ala.1999), is not on point. *In re Robinson* stands for the proposition that the CCPA's restrictions apply upon actual garnishment resulting from debts that have been excepted from the discharge of bankruptcy process. 240 B.R. 70, 95. No such garnishment is afoot in this case. Section 1673's garnishment restrictions do not, therefore, automatically apply.

██ Even were this provision somehow to apply automatically, it is clear to this Court that the CCPA's purpose is to keep debtors out of bankruptcy, and not to expand their protections once they have filed their bankruptcy petition. The Supreme Court, in *Kokoszka v. Belford*, has spoken directly on this point:

> An examination of the legislative history of the Consumer Protection Act makes it clear that, while it was enacted against the background of the Bankruptcy Act, it was not intended to alter the clear purpose of the latter Act to assemble, once a bankruptcy petition is filed, all of the debtor's assets for the benefit of his creditors. *See, e.g., Segal v. Rochelle*, 382 U.S. 375, 86 S.Ct. 511, 15 L.Ed.2d 428 (1966) (citation omitted). Indeed, Congress' concern was not the administration of a bankrupt's estate but the prevention of bankruptcy in the first place by eliminating 'an essential element in the predatory extension of credit resulting in a disruption of employment, production, as well as consumption' and a consequent increase in personal bankruptcies. 417 U.S. 642, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974).

Before Congress enacted the CCPA, ordinary wage earners had no other recourse to avoid garnishment but to seek bankruptcy protection and employers often fired employee debtors upon garnishment

of that employee's wages. The CCPA's restrictions were enacted in response to this situation; their purpose is to help debtors avoid, rather than protect them in bankruptcy. Its language further bears this out in that it "limit[s] the portion of earnings subject to garnishment" and "prohibit[s] employers from discharging employees because their wages had been garnished for any one indebtedness." 15 U.S.C. §§ 1673–1674. Like § 3170 and its surrounding scheme, these limits are exclusively for the purpose of restricting wage garnishment. They are designed for bankruptcy. Therefore, the Court finds that this claim has no merit.

## V. Conclusion

WHEREFORE; the Court hereby **AFFIRMS** the Bankruptcy Court's Order of July 16, 2002.