274 P.3d 906 (2012)
2012 UT 12
Donna WHITNEY, individually and as parent and heir of Dillon Whitney, deceased, Plaintiff and Appellee,
v.
DIVISION OF JUVENILE JUSTICE SERVICES, UTAH DEPARTMENT OF HUMAN SERVICES, State of Utah, Quest Youth Services, Kyle Lancaster, Dan Maldonado, Jason Kaufusi, Henry Kaufusi, Huy Nguyen, and Barry Howard, Defendants and Appellants.
No. 20100983.
Supreme Court of Utah.
March 6, 2012.
*907 Bridget K. Romano, Salt Lake City, for appellants.
Robert D. Strieper, Salt Lake City, for appellee.
Justice PARRISH authored the opinion of the Court, in which Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice NEHRING, and Justice LEE joined.
Justice PARRISH, opinion of the Court:

INTRODUCTION
¶ 1 This case presents a certified question of law from the Tenth Circuit Court of Appeals. Dillon Whitney's mother filed a wrongful death suit against the State of Utah after Dillon died while in state custody. The State filed a motion to dismiss, arguing that it was exempt from suit under the incarceration exception to the Governmental Immunity Act of Utah. The federal district court denied the motion and the State appealed. The appeals court certified to us the following question of state law:
Is a juvenile delinquent placed in a community-based proctor home incarcerated in a place of legal confinement, such that Utah has not waived its state sovereign immunity for injuries arising out of, in connection with, or resulting from his placement, pursuant to the Governmental Immunity Act of Utah, Utah Code § 63G-7-301(5)(j)?
¶ 2 We conclude that a juvenile who is placed in an unsecured community-based proctor home is not incarcerated in a place of legal confinement. Accordingly, the incarceration exception to the State's waiver of its sovereign immunity does not apply and the State remains potentially liable for damages related to Dillon Whitney's death.

BACKGROUND
¶ 3 After the State charged sixteen-year-old Dillon Whitney with several crimes, he was adjudicated a juvenile delinquent. The juvenile court released Dillon to the custody of the Utah Department of Human Services for placement in a diversion program by its subdivision, the Utah Division of Juvenile Justice Services (Juvenile Services). Juvenile Services initially sent Dillon to a wilderness diversion program, but removed him from the program after he disappeared for several hours during a camping trip. Dillon was then held at the Salt Lake Valley Detention Center for several weeks pending a court hearing.
¶ 4 At the hearing, the juvenile court directed Juvenile Services to perform an observation and assessment of Dillon. The juvenile court later ordered Juvenile Services to transfer Dillon to a community-based placement. Juvenile Services placed Dillon in the community-based proctor home of H. Kaufusi. Dillon lived in the basement of the proctor home with another proctor teen, while Kaufusi lived upstairs with his two children. The complaint alleged that Dillon and the other proctor teen were allowed to come and go at will. The basement had no locks that would have confined the proctor teens inside the home.
¶ 5 While in community-based placement, Dillon was not allowed to stay at either of his parents' homes. However, the juvenile court approved a Thanksgiving home visit, allowing Dillon to stay at his father's house from Thanksgiving until 9:00 p.m. the following day. Instead of returning to the proctor home after his Thanksgiving home visit, Dillon went to the apartment of Victor Hernandez. While there, Dillon fell down a flight of stairs and was placed on a couch in Mr. Hernandez's apartment. The next morning, Mr. Hernandez, believing that Dillon was dead, placed him outside in the stairwell. Neighbors notified paramedics, who transported Dillon to Salt Lake Regional Hospital. Dillon died en route to the hospital as a result of injuries sustained from his fall.
*908 ¶ 6 Dillon Whitney's parents, Donna and Destry Whitney,[1] filed a negligence suit in state court asserting claims against the Department of Human Services, Juvenile Services, and the State of Utah (collectively, the State). The State removed the action to the United States District Court for the District of Utah and filed a motion to dismiss, arguing that plaintiffs' state-law negligence claims were barred by state sovereign immunity under the Governmental Immunity Act of Utah. The district court denied the State's motion to dismiss, and the State filed an interlocutory appeal to the U.S. Court of Appeals for the Tenth Circuit. The court of appeals certified its question to this court. We have jurisdiction under section 78A-3-102(1) of the Utah Code.

STANDARD OF REVIEW
¶ 7 On a certified question, "we are not presented with a decision to affirm or reverse, and traditional standards of review do not apply." Ohio Cas. Ins. Co. v. Unigard Ins. Co., 2012 UT 1, ¶ 10, 268 P.3d 180 (internal quotation marks omitted).

ANALYSIS
¶ 8 Generally, we apply a three-part test to determine whether a claim is barred by governmental immunity. Peck v. State, 2008 UT 39, ¶ 8, 191 P.3d 4. This test "assesses (1) whether the activity undertaken is a governmental function; (2) whether governmental immunity was waived for the particular activity; and (3) whether there is an exception to that waiver." Id. (internal quotation marks omitted). Ms. Whitney's negligence claims against the State arise from Dillon's injuries, which occurred during his placement in a community-based proctor home. It is undisputed that juvenile placement in community-based proctor homes is a governmental function and that the State has waived its immunity for negligence claims. Thus, the question on which Ms. Whitney's claim depends is whether there is an exception to that waiver. And it is this question that has been certified to us by the Tenth Circuit.
¶ 9 The State argues that under the incarceration exception to the Governmental Immunity Act, it has not waived its immunity in cases where "the injury arises out of, in connection with, or results from ... the incarceration of any person in any state prison, county or city jail, or other place of legal confinement." UTAH CODE § 63G-7-301(5)(j). It alleges that Dillon's placement in the community-based program falls within the incarceration exception. We therefore must determine whether the State's placement of a juvenile in a community-based proctor home falls under the incarceration exception to the waiver of governmental immunity. We hold that a juvenile placed in an unsecured community-based proctor home is not incarcerated in a place of legal confinement. Accordingly, the incarceration exception does not apply.[2]
¶ 10 When construing a statute, our primary goal is to effectuate the intent of the legislature. Harold Selman, Inc. v. Box Elder Cnty., 2011 UT 18, ¶ 18, 251 P.3d 804. In so doing, we first examine the statutory language. Id. We "presume that the legislature used each word advisedly and read each term according to its ordinary and accepted meaning." Id. (internal quotation marks omitted).
¶ 11 Under the Governmental Immunity Act's incarceration exception, governmental immunity is preserved "if the injury arises out of, in connection with, or results from ... the incarceration of any person in any state prison, county or city jail, or other place of legal confinement." UTAH CODE § 63G-7-301(5)(j). This case therefore turns on the meaning of the phrase "incarceration ... [in a] place of legal confinement."
¶ 12 Ms. Whitney argues that incarceration in a place of legal confinement requires physical restraint or spatial confinement. Because *909 juveniles placed in community-based proctor homes are allowed to move freely in the community without any physical restrictions, she argues that they cannot be considered incarcerated. The State reads the statute more broadly. According to the State, incarceration in a place of legal confinement occurs whenever a party is "under the control of the State and unable to be released without some kind of permission." Peck, 2008 UT 39, ¶ 8, 191 P.3d 4 (internal quotation marks omitted). We do not read the incarceration exception so broadly.
¶ 13 The language selected by the legislature demonstrates that it intended the phrase "incarceration ... [in a] place of legal confinement" to include an element of physical restriction or spatial confinement. The verb incarcerate means "to imprison; jail" or "to shut up; confine." WEBSTER'S NEW COLLEGE DICTIONARY 720 (2007). Confinement means "imprisonment" or "limitation; restriction; restraint." Id. at 306. Thus, if we interpret "incarceration" and "confinement" according to their ordinary and accepted meanings, it is clear that the legislature intended the phrase "incarceration ... [in a] place of legal confinement" to encompass an element of spatial confinement or physical restriction.
¶ 14 It is also important to read the statutory language in context. The statute speaks of incarceration in a "state prison, county or city jail, or other place of legal confinement." UTAH CODE § 63G-7-301(5)(j). Under the doctrine of ejusdum generis, we read a statute's use of a term or phrase as "restricted to include things of the same kind, class, character, or nature as those specifically enumerated." T-Mobile USA, Inc. v. Utah State Tax Comm'n, 2011 UT 28, ¶ 26, 254 P.3d 752 (internal quotation marks omitted). Thus, we interpret the phrase "place of legal confinement" in the context of the enumerated examples, which speak in terms of "jail" and "prison." In this context, we do not believe it is possible to conclude that the legislature intended the phrase "other place of legal confinement" to encompass placement in a community-based proctor home with no physical restraint or spatial restriction.
¶ 15 Our case law is consistent with this reading. We previously have held that an injured party is incarcerated in a place of legal confinement only in cases where he was spatially confined or physically constrained. For instance, we have reasoned that where the state confines a person to a specific place like a jail, prison, or mental hospital, that would necessarily constitute "incarceration... [in a] place of legal confinement" because the person is confined within a specific space, under physical control by the state, and is not free to leave. See Madsen v. State, 583 P.2d 92, 92-93 (Utah 1978) (holding that a prisoner who died in surgery at the prison hospital was incarcerated because he died under the control of prison officials while at the prison hospital); Emery v. State, 26 Utah 2d 1, 483 P.2d 1296, 1296-98 (1971) (holding that a voluntary in-patient at a mental hospital was incarcerated in a place of legal confinement because state law required that the patient remain in the state hospital for a 48-hour hold period, during which time he was not free to leave). And in those cases where the injured party was not confined to a specific place, we have reasoned that he may still be incarcerated in a place of legal confinement if the state had physically restrained him so that he was not free to leave. See Peck, 2008 UT 39, ¶ 8, 191 P.3d 4 (noting that there was "no dispute" that the injured party was incarcerated where he had been arrested, handcuffed, and told to stand in front of a police cruiser); Epting v. State, 546 P.2d 242, 243-44 (Utah 1976) (noting that the government was immune from suit where a prisoner had escaped from work release and killed a woman, concluding that it was possible that "he was still under the control of the prison authorities" where he had been physically driven to and from work); see also Pace v. St. George City Police Dep't, 2006 UT App 494, ¶¶ 2, 7, 153 P.3d 789 (holding that a man who used his own gun to shoot himself in a police restroom was incarcerated because he was placed under arrest, he was in police custody, and police escorted him to the restroom and only removed his restraints to permit him to use the restroom).
¶ 16 In contrast, youth placed in community-based proctor homes are neither physically *910 restrained nor spatially confined. The Youth Corrections Act gives the juvenile court two placement options for juveniles, like Dillon, who have been adjudicated delinquent. The juvenile court must "specify whether the youth offender is being committed for secure confinement or placement in a community-based program." UTAH CODE § 62A-7-104(4) (emphasis added). And the Youth Corrections Act defines a community-based program as "a nonsecure residential or nonresidential program designated to supervise and rehabilitate youth offenders in the least restrictive setting." Id. § 62A-7-101(3) (emphases added). Thus, while a juvenile placed in a community-based program may be in state custody, he can hardly be considered incarcerated given the "nonsecure" and "least restrictive" nature of such programs. In short, because youth placed in community-based proctor homes are neither physically nor spatially confined, they are not "incarcerat[ed]... [in a] place of legal confinement."
¶ 17 The State argues that neither physical nor spatial confinement are prerequisites to application of the incarceration exception. In so arguing, it relies on our decision in Peck v. State, 2008 UT 39, 191 P.3d 4. In Peck, we held that an injured party was "under the control of the State," because he could not "be released without some kind of permission." Id. ¶ 8 (internal quotation marks omitted). But the State reads our decision in Peck too broadly. In Peck, we concluded that the injured party was clearly incarcerated where he had been "arrested, handcuffed, and told to stand in front of the police cruiser." Id. Only then did we mention that the injured party had been "under the control of the State and unable to be released without some kind of permission." Id. (internal quotation marks omitted). Peck does not stand for the proposition that any individual subject to state control qualifies for application of the incarceration exception. Rather, a more accurate summary of our case law is that an injured party is considered incarcerated under the Governmental Immunity Act where he is under the physical control of the state (through physical restraints or spatial confinement) and may not be released from that physical control without permission.
¶ 18 The State also contends that Dillon Whitney was confined because he was not allowed to spend the night at either of his parents' homes without the permission of the juvenile court. But this is not a sufficient physical or spatial restriction to render Dillon "incarcerat[ed] ... [in a] place of legal confinement." It is true that juveniles residing in community-based proctor homes may be under the legal control of the State and cannot be released without permission in the sense that they are subject to the continuing jurisdiction of the juvenile court. But the mere fact of continuing court jurisdiction or theoretical control by the State does not constitute confinement where the juvenile court specifically decided to place Dillon in the least restrictive setting available.
¶ 19 Dillon Whitney was neither confined spatially nor physically. Rather, the proctor home provided the "least restrictive" placement available under the Youth Corrections Act. As alleged in the complaint, Dillon was allowed "to come and go at-will" from his basement apartment while the proctor resided upstairs. And at oral argument, the State conceded that there were no security measures or locks that confined Dillon to the basement of the proctor home. Rather, he was allowed to roam freely in the community. In short, he was not incarcerated in a place of legal confinement for purposes of the Governmental Immunity Act.[3]

CONCLUSION
¶ 20 A juvenile delinquent placed in an unsecured community-based proctor home is not considered "incarcerat[ed] ... [in a] place of legal confinement" under the Governmental Immunity Act, Utah Code section *911 63G-7-301(5)(j). Thus, the incarceration exception does not apply.
NOTES
[1] Dillon's father, Destry Whitney, voluntarily dismissed his suit with prejudice. Thus, only Donna Whitney's suit remains.
[2] At oral argument, the State noted that it has moved to amend its answer to assert that the licensing exception to the Governmental Immunity Act also applies to bar Ms. Whitney's claims. See UTAH CODE § 63G-7-301(5)(c). But this question is not before us on certification.
[3] Because we conclude that the incarceration exception does not apply in this case, we need not reach Ms. Whitney's argument that the incarceration exception violates the Utah State Constitution. See Alliant Techsystems, Inc. v. Salt Lake Cnty. Bd. of Equalization, 2012 UT 4, ¶ 27 n. 41, 270 P.3d 441 ("Courts should generally resolve cases on the narrowest applicable grounds unless specific reasons exist for offering broader guidance." (alternation omitted) (internal quotation marks omitted)).