2012 UT 82

**In re Douglas James REINHART, Debtor.**

**David L. Gladwell, Trustee, Appellant,**

v.

**Douglas James Reinhart, Appellee.**

No. 20110257.

Supreme Court of Utah.

Dec. 4, 2012.

Adam S. Affleck, Charles L. Perschon, Salt Lake City, for appellant.

Duane H. Gillman, Michael F. Thomson, Jessica G. Peterson, Salt Lake City, Stephen R. Bailey, Ogden, for appellee.

Justice PARRISH, opinion of the Court:

## INTRODUCTION

¶ 1 This case presents a certified question of law from the Tenth Circuit Court of Appeals. Dr. Douglas Reinhart claimed an exemption in bankruptcy for 75 percent of wages that he earned prior to filing his bankruptcy petition but that were either paid to or still owing to Dr. Reinhart after the date of the petition. Dr. Reinhart based his claim on section 1673 of the federal Consumer Credit Protection Act (Section 1673), 15 U.S.C. 1673, and, alternatively, on Section 103 of the Utah Consumer Credit Code (Section 103), UTAH CODE § 70C–7–103. The trustee of Dr. Reinhart's bankruptcy estate, David Gladwell (Trustee), opposed the claimed exemption. The bankruptcy court permitted the exemption, the district court summarily affirmed, and the Trustee appealed to the Tenth Circuit Court of Appeals. The Tenth Circuit held that Section 1673 did not permit Dr. Reinhart's claimed exemption. To resolve the state law question presented

under Section 103, the appeals court certified the following question to us: "Does [Section 103] create an exemption in bankruptcy, or does it only limit a judgment creditor's garnishment remedy outside bankruptcy?"

¶ 2 We conclude that Section 103 does not create an exemption in bankruptcy. Instead, Section 103 limits garnishment of a debtor's disposable earnings under the narrow circumstance when a creditor seeks to enforce payment of a judgment based on a consumer credit agreement. Accordingly, Dr. Reinhart may not rely on Section 103 to assert an exemption in bankruptcy.

## BACKGROUND

¶ 3 We recite the facts as stated in the certification order filed by the Tenth Circuit Court of Appeals. On December 30, 2004, the Trustee commenced an adversary proceeding against Dr. Reinhart and his professional corporation, Douglas J. Reinhart, M.D., P.C. The Trustee sought to recover at least $49,000 in salary, bonuses, and interest that Dr. Reinhart earned prior to filing his bankruptcy petition, but which the corporation either paid to or still owed to Dr. Reinhart after the petition date (collectively, Pre–Petition Wages). The parties resolved the adversary proceeding in arbitration, with the arbitrator awarding $10,315 for Dr. Reinhart's 1999 unpaid wages. *Gladwell v. Reinhart*, No. 00–20995, slip op. at 2 (Bankr. D.Utah July 8, 2008).[1]

¶ 4 During the adversary proceeding, Dr. Reinhart amended Schedules B and C of his petition to claim an exemption for 75 percent of the Pre–Petition Wages. He based his claim on Section 1673 of the federal Consumer Credit Protection Act (Consumer Protection Act), 15 U.S.C. 1673; Section 103 of the Utah Consumer Credit Code (Utah Credit Code); Utah Code section 70C–7–103; and *In re Stewart*, 32 B.R. 132, 139 (Bankr. D.Utah 1983), which interpreted a predecessor to Section 103.

¶ 5 The Trustee opposed the claimed exemption. He argued that *Kokoszka v. Belford*, 417 U.S. 642, 94 S.Ct. 2431, 41 L.Ed.2d

374 (1974), precluded Dr. Reinhart's claim for an exemption under Section 1673 of the Consumer Protection Act. The Trustee also argued that Section 103 does not create an exemption in bankruptcy for the following reasons: (1) Section 103 is similar to the Consumer Protection Act and *Kokoszka* resolved the issue; (2) Section 103, by its terms, does not apply in bankruptcy; (3) Section 103's garnishment limitation serves a different purpose than a bankruptcy exemption; and (4) *In re Stewart* was wrongly decided and, in any event, was later abrogated by subsequent amendments to the Utah Credit Code.

¶ 6 The bankruptcy court overruled the Trustee's objection. It did not, however, articulate its reason for doing so. Instead, it merely stated that Dr. Reinhart could exempt 75 percent of the Pre–Petition Wages under either Section 1673 or Section 103, as interpreted by *In re Stewart*. The district court summarily affirmed the bankruptcy court and the Trustee appealed to the Tenth Circuit Court of Appeals.

¶ 7 The Tenth Circuit held that *Kokoszka* governed Dr. Reinhart's claimed exemption under Section 1673 and that "the Supreme Court has instructed that [Section 1673] does not provide for an exemption in bankruptcy . . . ." *Gladwell v. Reinhart*, 416 Fed.Appx. 761, 763 (10th Cir.2011). The Tenth Circuit noted that Utah courts have yet to address whether Section 103 provides an alternative basis for an exemption in bankruptcy. *Id.* Accordingly, the Tenth Circuit certified to us three questions of state law. *Id.* We have jurisdiction pursuant to section 78A–3–102(1) of the Utah Code.

## STANDARD OF REVIEW

¶ 8 "On a certified question, we are not presented with a decision to affirm or reverse, and traditional standards of review do not apply." *Whitney v. Div. of Juvenile Justice Servs.*, 2012 UT 12, ¶ 7, 274 P.3d 906 (internal quotation marks omitted).

---

1. Dr. Gladwell also earned an unspecified amount of unpaid wages in 2000. *Gladwell v. Reinhart*, No. 00–20995, slip op. at 2 (Bankr. D.Utah July 8, 2008).

## ANALYSIS

¶ 9 The United States Court of Appeals for the Tenth Circuit has certified to us three questions of state law. First, "Does Utah Code Ann. § 70C–7–103 create an exemption in bankruptcy, or does it only limit a judgment creditor's garnishment remedy outside bankruptcy?" Second, "If § 70C–7–103 does create an exemption in bankruptcy, do prepetition wages such as those claimed by the debtor in this case qualify as 'disposable earnings' under the statute?" Third, "If § 70C–7–103 does create an exemption in bankruptcy, and the debtor's pre-petition wages qualify as 'disposable earnings' under the statute, do the debts in this case 'aris[e] from a consumer credit agreement'?"

¶ 10 With respect to the first question, we hold that Section 103 does not provide an exemption in bankruptcy. Rather, it limits only a creditor's ability to garnish a debtor's disposable earnings in cases involving an individual judgment based on a consumer credit agreement. Because we conclude that Section 103 does not create an exemption in bankruptcy, we do not address the second and third certified questions.

## I. SECTION 103 DOES NOT CREATE AN EXEMPTION IN BANKRUPTCY

■ ¶ 11 The Tenth Circuit's first certified question asks us to determine whether Section 103 of the Utah Credit Code provides an exemption in bankruptcy. The federal bankruptcy code provides a process for debtors to discharge debts and obtain a "fresh start." *Gladwell v. Reinhart (Reinhart I)*, 2011 UT 77, ¶ 14, 267 P.3d 895 (internal quotation marks omitted). To initiate Chapter 7 bankruptcy, the type of bankruptcy at issue here, a debtor files a petition. 11 U.S.C. § 101(42). Doing so creates an estate, which is comprised of "all legal or equitable interests of the debtor in property" at the time of filing. 11 U.S.C. § 541(a)(1). A trustee is appointed to manage the bankruptcy estate. 11 U.S.C. § 1104(a). The debtor must deliver all property of the bankruptcy estate to the trustee. 11 U.S.C. §§ 542(a), 704(a)(1). After assembling the property of the estate, the trustee liquidates the property. 11 U.S.C. § 704(a)(1). The proceeds are then distributed to the bankruptcy estate's creditors based on a statutorily prescribed priority schedule. 11 U.S.C. § 726; *see also* 11 U.S.C. § 507.

¶ 12 Pursuant to statute, a debtor may exempt property from the bankruptcy estate. Upon claiming a valid exemption, the exempt property passes out of the bankruptcy estate and returns to the debtor. 11 U.S.C. § 522(c) ("[P]roperty exempted under this section is not liable during or after the case for any debt of the debtor that arose ... before the commencement of the case....").

¶ 13 Each state has the opportunity to accept federally enumerated bankruptcy exemptions, 11 U.S.C. § 522(d), or to opt-out and provide its own bankruptcy exemptions, *see* 11 U.S.C. § 522(b)(2). Utah has elected to opt-out. UTAH CODE § 78–23–15 (2004) ("No individual may exempt from the property of the estate in any bankruptcy proceeding the property specified in [s]ubsection (d) of Section 522 of the Bankruptcy Reform Act (Public Law 95–598), except as may otherwise be expressly permitted under this chapter." (footnote omitted)). As a result, the bankruptcy exemptions available to a debtor in Utah are those "under Federal law, other than [Section 522(d)], or State or local law that is applicable on the date of the filing of the [bankruptcy] petition...." 11 U.S.C. § 522(b)(3)(A). Utah's exemptions are generally located in the Exemptions Act. *See* UTAH CODE §§ 78B–5–501 to –513. But additional exemptions may be found outside the Exemptions Act. *See, e.g.,* UTAH CODE § 35A–3–112 ("Public assistance provided under this chapter is not assignable, at law or in equity, and none of the money paid or payable under this chapter is subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.").

¶ 14 The first of the certified questions asks us to determine whether one such section, located outside of the Exemptions Act, creates an exemption in bankruptcy. The section at issue is Section 103. Section 103 states:

(2) The maximum part of the aggregate disposable earnings of an individual for any pay period which is subjected to garnishment to enforce payment of a judgment arising from a consumer credit agreement may not exceed the lesser of:

    (a) 25% of his disposable earnings for that pay period; or

    (b) the amount by which his disposable earnings for that pay period exceed 30 hours per week multiplied by the federal minimum hourly wage prescribed by Section 6(a)(1) of the Fair Labor Standards Act of 1938, 29 U.S.C., Section 206(a)(1), in effect at the time the earnings are payable.

Section 103 defines "disposable earnings" as "that part of the earnings of an individual remaining after the deduction from those earnings of amounts required by law to be withheld." UTAH CODE § 70C–1–103(1)(a). And the Utah Credit Code further defines "earnings" as "compensation paid or payable to an individual or for the individual's account for personal services rendered or to be rendered by the individual...." *Id.* § 70C–1–302(5).

¶ 15 The Trustee urges multiple arguments in support of his position that Section 103 does not create an exemption in bankruptcy. First, he argues that the Legislature intended Section 103 of the Utah Credit Code to have the same meaning as Section 1673 of the Consumer Protection Act. He points out that the two provisions use "essentially the same" language. He also notes that section 70C–1–301 of the Utah Code provides that undefined definitions or terms in the Utah Credit Code have the same meaning as when used in the Consumer Protection Act. Due to the similarities between Section 103 and Section 1673, the Trustee contends that we should base our decision on *Kokoszka v. Belford,* 417 U.S. 642, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974), which held that the Consumer Protection Act does not provide an exemption in bankruptcy. The Trustee contends that the contrary holding reached by the United States Bankruptcy Court for the District of Utah in *In re Stewart,* 32 B.R. 132 (Bankr.D.Utah 1983), is incorrect because it avoids the plain language of Section 103, ignores similarities between the Consumer Protection Act and the Utah Credit Code, and discounts amendments to the Utah Credit Code that superseded the decision.

¶ 16 In contrast, Dr. Reinhart argues that Section 103 does create an exemption in bankruptcy. He begins with the proposition that Section 103 must be liberally construed in favor of debtors. He then reasons that, because Utah opted out of the federal bankruptcy exemptions, the similar language in Section 103 and Section 1673 and the United States Supreme Court's decision in *Kokoszka* have "no bearing" on whether the Legislature intended Section 103 to provide a bankruptcy exemption. Specifically, he argues that while section 70C–1–301 of the Utah Code may have incorporated definitions and terms from the Consumer Protection Act, it did not incorporate cases interpreting the Act. Dr. Reinhart urges us to follow *In re Stewart,* a case in which the United States Bankruptcy Court for the District of Utah conducted an analysis of the history of Utah wage exemptions and decided that a predecessor to Section 103 created an exemption in bankruptcy.

### A. The Text and Context of Section 103 Dictate the Conclusion that It Does not Create an Exemption in Bankruptcy

¶ 17 When interpreting a statute "we look first to the plain language, recognizing that our primary goal is to give effect to the legislature's intent in light of the purpose the statute was meant to achieve." *Reinhart I,* 2011 UT 77, ¶ 10, 267 P.3d 895 (alterations omitted) (internal quotation marks omitted). "Often, statutory text may not be plain when read in isolation, but may become so in light of its linguistic, structural, and statutory context." *State v. J.M.S.,* 2011 UT 75, ¶ 13, 280 P.3d 410 (internal quotation marks omitted). As a result, "our interpretation of a statute requires that each part or section be construed in connection with every other part or section so as to produce a *harmonious whole.*" *Id.* (emphasis in original) (internal quotation marks omitted). If, having reviewed the statute's plain language and structure, "we find the provision ambigu-

ous[,] we then seek guidance from the legislative history." *Reinhart I*, 2011 UT 77, ¶ 10, 267 P.3d 895 (alterations omitted) (internal quotation marks omitted). "In addition, we construe exemption statutes liberally in favor of the debtor to protect him and his family from hardship." *Id.* (alteration omitted) (internal quotation marks omitted).

■ ¶ 18 We therefore begin with the text of Section 103. Section 103 provides limits on garnishment to "enforce payment of a judgment arising from a consumer credit agreement." UTAH CODE § 70C–7–103(2). Section 103's specific reference to "a consumer credit agreement" suggests that it was not intended to create a general bankruptcy exemption. First, the phrase "consumer credit agreement" refers to a specific type of debt—arising from "a consumer credit agreement"—rather than to a debtor's general indebtedness. The Utah Credit Code does not define "consumer credit agreement." But in describing "covered transactions," section 70C–1–201 of the Utah Code states that "the provisions of this title apply to all credit offered or extended by a creditor to an individual person primarily for personal, family, or household purposes." Additionally, Section 103 is limited to circumstances where a creditor is "enforc[ing] payment of a judgment." This phrase refers to enforcement of an existing judgment, as contrasted with an action in bankruptcy, which is a legal proceeding to discharge existing debts, whether or not reduced to judgment.[2] Thus, Section 103 limits garnishments only under the narrow circumstance when a creditor obtains a judgment to enforce payment of a consumer credit agreement. It does not, by its terms, create a general exemption in bankruptcy.

¶ 19 This narrow interpretation of Section 103 is consistent with its context and the overall statutory scheme. For instance, in prohibiting prejudgment garnishment, section 70C–7–102 (Section 102) of the Utah Code states that "[p]rior to entry of judgment *in an action* against a debtor relating to a *consumer credit agreement*, the creditor may not attach unpaid earnings of the debtor by garnishment or like proceedings." (Emphases added.) Thus, Section 102 contemplates one action based specifically on a *consumer credit agreement*. Similarly, section 70C–7–104 states that "[n]o employer may discharge any employee because his earnings have been subject to garnishment in connection with any one *judgment*." (Emphasis added.) In context, Section 103 and the sections surrounding it comprise a statutory scheme that limits garnishment of a debtor's disposable earnings after a creditor has obtained a *final judgment* based specifically on a *consumer credit agreement*. This specialized protection limiting garnishment in cases of judgments arising from consumer credit agreements differs significantly from a general exemption in bankruptcy designed to exempt a debtor's property from the efforts of a trustee who is charged with assembling the debtor's property into a bankrupt estate, liquidating it, and then distributing the proceeds among eligible creditors.

¶ 20 Our narrow construction of Section 103 is also consistent with the broader statutory context. Historically, Utah law provided debtors with an exemption for earnings, regardless of the type of debt incurred, and whether or not that debt was subject to the debtor's bankruptcy. Specifically, section 78–23–1 stated that "[t]he following property is exempt from execution ... [o]ne-half of the earnings of the judgment debtor for his personal services rendered at any time within thirty days next preceding the levy of execution or attachment by garnishment or otherwise...." UTAH CODE § 78–23–1(7) (1953). The earnings exemption was located in a section titled "Property exempt from execution" and it appeared alongside other exemptions, such as an exemption for personal property. *See, e.g.,* UTAH CODE § 78–23–1(1) (1953).

¶ 21 When Utah adopted the Utah Credit Code in 1969, including Utah Code section 70B–5–105,[3] it left the earnings exemption

---

**2.** *See, e.g.,* BLACK'S LAW DICTIONARY 166 (9th ed. 2009) (defining bankruptcy as "[a] statutory procedure by which a ... debtor obtains financial relief and undergoes a judicially supervised reor-

ganization or liquidation of the debtor's assets for the benefit of creditors").

**3.** The Legislature renumbered section 70B–5–105 of the Utah Code to its current number,

under Utah Code section 78–23–1(7) in place. Thus, the Legislature added Section 103 as a complement to the earnings exemption, not as a substitute for it. And Section 103 could not be considered a substitute for the earnings exemption because the two sections differ in material ways. The earnings exemption protects a debtor from execution generally, while Section 103 only protects a debtor from garnishment. Second, the earnings exemption limits garnishment regardless of the type of debt. Section 103, on the other hand, limits garnishment only for debts "arising from a consumer credit agreement." Third, the earnings exemption protects only earnings from personal services rendered within thirty days of the garnishment, but Section 103 does not contain a time limitation. Finally, the earnings exemption permits garnishment of 50 percent of a debtor's earnings, while Section 103 only permits garnishment of 25 percent of a debtor's earnings.

¶ 22 Section 103 and the earnings exemption coexisted until 1981. That year, the Legislature adopted the Utah Exemptions Act.[4] UTAH CODE § 78–23–1 (1981). At that

section 70C–7–103, in 1985. We refer to Section 103 for clarity.

**4.** The Utah Exemptions Act replaced former section 78–23–1 of the Utah Code.

**5.** Dr. Reinhart argues that we should construe Section 103 as an exemption in bankruptcy based on our historic practice of liberally construing bankruptcy exemptions in favor of debtors. Dr. Reinhart is correct that we have historically "construe[d] exemption statutes liberally ... in favor of the debtor to protect him and his family from hardship." *See, e.g., Reinhart I,* 2011 UT 77, ¶ 10, 267 P.3d 895 (second alteration in original) (internal quotation marks omitted). But we cannot apply our liberal construction rule where it is in conflict with the plain meaning of the statute, which dictates that Section 103 does not create an exemption in bankruptcy. *Riendeau v. Canney (In re Riendeau),* 293 B.R. 832, 835 (D.Vt.2002) ("Vermont's tradition of [liberal construction in favor of the debtor] has always been within the parameters of [the exemption statute's] plain meaning.") (second alteration in original) (internal quotation marks omitted), [*aff'd,* 336 F.3d 78 (2d Cir.2003) ].

**6.** In arguing that Section 103 does not create a bankruptcy exemption, the Trustee relies heavily on the U.S. Supreme Court's decision in *Kokoszka v. Belford,* 417 U.S. 642, 94 S.Ct. 2431, 41

time, the Legislature repealed the earnings exemption. And while the Legislature retained Section 103, it did not amend Section 103 to provide protection comparable to the repealed earnings exemption.[5] This is consistent with our conclusion that the Legislature did not intend for Section 103 to create an exemption in bankruptcy.[6]

### B. In re Stewart Provided an Incorrect Interpretation of Utah Law

¶ 23 In arguing that Section 103 creates an exemption in bankruptcy, Dr. Reinhart relies heavily on *In re Stewart.* Specifically, he argues that *In re Stewart* thoroughly analyzed Utah wage exemptions and "squarely decided" that Section 103 provides an exemption in bankruptcy. We find *In re Stewart* unpersuasive because it ignored significant aspects of Utah's statutory history and did not analyze the relationship between the Utah Credit Code and the Consumer Protection Act.

¶ 24 *In re Stewart,* decided nearly thirty years ago by the United States Bankruptcy Court for the District of Utah, addressed two

L.Ed.2d 374 (1974). In *Kokoszka,* the U.S. Supreme Court held that a tax refund did not qualify as property under the bankruptcy code because it was "not the weekly or other periodic income required by a wage earner for his basic support...." *Id.* at 648, 94 S.Ct. 2431 (internal quotation marks omitted). While not necessary to its decision, the Court considered whether the garnishment limitation provided in the Consumer Protection Act applied as an exemption in bankruptcy and concluded that the debtor's "protection and remedy remained under the Bankruptcy Act." *Id.* at 651, 94 S.Ct. 2431. While the Court "did not directly hold that the [Consumer Protection Act] is not a federal bankruptcy exemption statute, such a conclusion is compelled by its reasoning and by the legislative history of the [Consumer Protection Act] there discussed." *In re Brissette,* 561 F.2d 779, 785 (9th Cir.1977) (citing *Kokoszka v. Belford,* 417 U.S. 642, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974)).

Because the Utah Credit Code is nearly identical to the Uniform Consumer Credit Code, the Trustee argues that the reasoning of *Kokoszka* is instructive with respect to our construction of Section 103. However, in light of our conclusion that the plain language of Section 103 does not create an exemption in bankruptcy, we need not address *Kokoszka* or the relationship between Section 103 and the Uniform Consumer Credit Code.

debtors' claimed exemptions for "wages earned but not paid on the filing dates of their petitions." 32 B.R. at 133. Because the issue presented had not been addressed by the Utah courts, the bankruptcy court reviewed Utah's statutory history relating to garnishment of debtors' earnings. *Id.* at 133–35. The bankruptcy court noted that, from "its territorial days" through 1951, Utah recognized a bankruptcy exemption for a portion of a judgment debtor's earnings. *Id.* at 133–34. It treated the Legislature's adoption of the Utah Credit Code as an extension of this historic exemption. *Id.* at 134–35. The bankruptcy court concluded that the Legislature's decision not to repeal Section 103 when it passed the Utah Exemptions Act in 1981 demonstrated the Legislature's intent for Section 103 to continue the historical earnings exemption in bankruptcy.[7] *Id.* at 135.

¶ 25 We are unpersuaded by *In re Stewart* because it ignores critical stages in Utah's statutory history. As previously discussed, prior to 1981, section 78–23–1 of the Utah Code "exempt[ed] from execution ... [o]ne-half of the earnings of the judgment debtor for his personal services rendered at any time within thirty days next preceding the levy of execution or attachment by garnishment or otherwise...." Utah Code § 78–23–1(7) (1953). In 1969, the Legislature adopted Section 103. The earnings exemption and Section 103 coexisted until 1981. In 1981, the Legislature adopted the Exemptions Act and repealed the earnings exemption. The bankruptcy court makes no mention of the Legislature's decision to eliminate the earnings exemption. Yet the repeal directly contradicts the bankruptcy court's conclusion that the Legislature had no intent to repeal or replace the earnings exemption. Moreover, it belies the bankruptcy court's assumption that Section 103 was an extension of the historic earnings exemption. Instead, Section 103 existed alongside and operated independently of the earnings exemption for many years. We also find the bankruptcy court's decision deficient because it failed to analyze fundamental differences between the language of Section 103 and the historic earn-

ings exemption, *supra* ¶ 21, and it did not analyze the relationship between the Utah Credit Code and the Consumer Protection Act.

## CONCLUSION

¶ 26 Section 103 of the Utah Credit Code partially protects a debtor's disposable earnings from garnishment under the narrow circumstance where a creditor seeks to enforce payment of an individual judgment arising from a specific consumer credit agreement. The specific protection provided by Section 103 does not create a general exemption in bankruptcy.

Justice PARRISH authored the opinion of the Court, in which Chief Justice DURRANT, Associate Chief Justice NEHRING, Justice DURHAM, and Justice LEE joined.

---

7. *In re Stewart* discussed a predecessor of Section 103. We refer to Section 103 for clarity.